[No. B199453. Second Dist., Div. Seven. Sept. 19, 2008.]

KEVIN JOHNSON, Plaintiff and Appellant, v.
GLAXOSMITHKLINE, INC., Defendant and Respondent.

**COUNSEL**

Kabateck, Brown Kellner, Brian S. Kabateck, Richard L. Kellner, Alfredo Torrijos; Khorrami Pollard & Abir, H. Scott Leviant, Shawn Khorrami, Matt C. Bailey; Milstein Adelman & Kreger, Wayne S. Kreger and Paul D. Stevens for Plaintiff and Appellant.

Drinker Biddle & Reath, William A. Hanssen; King & Spalding, Todd P. Davis, Stephen B. Devereaux and Bradley W. Pratt for Defendant and Respondent.

**OPINION**

**PERLUSS, P. J.**—In two published decisions the United States District Court for the Central District of California denied class certification in putative class actions brought by current and former users of the prescription drug Paxil against GlaxoSmithKline, Inc. (GSK), the drug's manufacturer, which alleged GSK had deceptively advertised Paxil as non-habit-forming.

Relying upon those decisions and *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223 [49 Cal.Rptr.3d 892] (*Alvarez*), which applied established principles of collateral estoppel to class certification issues, the trial court granted GSK's motion for summary adjudication precluding this case from proceeding as a class action, ruling Kevin Johnson's superior court lawsuit against GSK sought to certify the identical putative class, pursuing the same legal claims, as had been disallowed in the federal actions. Because the class issues actually litigated in the federal court Paxil cases differ from those presented by Johnson's putative class action, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Johnson's First Amended Complaint*

Paxil, a drug manufactured and distributed by GSK, is prescribed for conditions including depression, panic disorder and generalized anxiety disorder. On January 14, 2003 Johnson filed his original complaint and on July 15, 2003 filed a first amended putative class action complaint against GSK on behalf of all California residents who had taken Paxil after 1992 and had become addicted to it or had suffered withdrawal symptoms when they attempted to stop taking it.[1] The complaint asserted causes of action for negligent misrepresentation, concealment, negligence, strict product liability and violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq. (section 17200)), largely on the basis GSK had falsely and deceptively advertised Paxil as non-habit-forming.

Johnson alleged he was prescribed Paxil in early 2000 for moderate anxiety caused by the stress of work and family. Johnson further alleged, albeit without specifying the timing, that he had seen television and heard radio advertisements stating Paxil had few side effects and was not addictive; in addition, his doctor never informed him of any side effects or addiction-related symptoms. For a short while the drug was effective; Johnson felt euphoric and better able to deal with stress. Johnson, however, began suffering from fatigue and sexual dysfunction, motivating him to discontinue using Paxil in January 2002. When Johnson stopped, he experienced severe physical and emotional withdrawal symptoms, including headaches, heart palpitations and the sensation of electric shocks throughout his body. Even after one year Johnson continued to suffer from, among other symptoms, insomnia and the electric shock sensation. Johnson alleged he would not have taken Paxil had these symptoms been explained to him by his doctor, who himself was inadequately warned by GSK about these symptoms.

---

[1] Other named plaintiffs were George Grair and Lynn Booker. For reasons unrelated to class certification, the trial court dismissed with prejudice all of Booker's claims on June 2, 2005 and Grair's claims on May 24, 2006.

## 2. *Johnson's Class Definitions*

The first amended complaint defined the putative class as "all California residents, who are not deceased, who have been prescribed, and have taken Paxil at any time after 1992, and who have suffered or continue to suffer from withdrawal episodes or symptoms, or those who have become addicted and/or [are] unable to stop taking Paxil for fear of these symptoms." In response to the trial court's request at a status conference for a definite class definition, in a joint statement filed June 25, 2004, the class definition was revised to include "all California residents, who are not deceased, who have been prescribed, and have taken Paxil at any time after 1992 until the present."

## 3. *GSK's Motion for Summary Adjudication*

On January 19, 2007 GSK filed a motion for summary adjudication to preclude Johnson's lawsuit from proceeding as a class action. GSK asserted under the collateral estoppel principles applied to class action determinations by Division Four of this court in its then-recent decision in *Alvarez, supra*, 143 Cal.App.4th 1223,[2] United States Senior District Judge Mariana R. Pfaelzer's decisions denying class certification in *In re Paxil Litigation* (C.D.Cal. 2003) 212 F.R.D. 539 (*Paxil I*) and *In re Paxil Litigation* (C.D.Cal. 2003) 218 F.R.D. 242 (*Paxil II*) barred Johnson's class action claims. Johnson filed an opposition addressing the collateral estoppel issue; GSK replied; and the court heard oral argument on February 16, 2007. At the hearing the trial court requested further briefing on whether the denials of class certification in *Paxil I* and *Paxil II* satisfied all of the required elements for collateral estoppel. Following receipt of the supplemental briefs requested by the court, the matter was submitted.

### a. Paxil I

On August 1, 2002 in *Paxil I, supra*, 212 F.R.D. 539, 542, the plaintiffs moved under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (rule 23) to certify five nationwide subclasses of Paxil users, differentiated by whether the user was still taking Paxil and the type of relief sought, in an action asserting claims including negligence, breach of express and implied warranty and violation of state unfair competition laws. The district court described the initial motion for class certification, including the proposed class definition, as deficient: "[C]ontrary to established Constitutional standards, [it] failed to take into account differences in state law. As well, the

---

[2] The decision in *Alvarez, supra*, 143 Cal.App.4th 1223 was filed approximately three months before GSK's motion for summary adjudication. The Supreme Court denied review and a request for depublication while GSK's motion was pending in the trial court. (*Alvarez v. May Dept. Stores Co.*, review den. Feb. 7, 2007, S148276.)

[m]otion improvidently downplayed the individual factual and legal issues that inevitably arise when prosecuting a personal injury tort lawsuit that centers around the effects of a pharmaceutical drug on the human body." (*Paxil I*, at p. 542.) Consequently, the plaintiffs substantially modified the class definitions in their reply papers and proposed 12 subclasses, grouping together plaintiffs in states with similar laws. (*Id.* at pp. 542, 545.) One proposed subclass was for "[a]ll persons who have used Paxil and who reside in 3 states, including California which are identical to California's [unfair competition law] where plaintiff need not show reliance, causation or damage." In a footnote the plaintiffs argued, "If the court does not certify the five state subclasses then at the very least it should certify a subclass of California plaintiffs under the [unfair competition law]."

The district court denied the plaintiffs' motion, generally finding they had failed "to define a manageable class" and had "failed to demonstrate that a manageable trial plan exist[ed] that would make a class action lawsuit feasible." (*Paxil I, supra*, 212 F.R.D. at p. 544.) Among other issues, the court was concerned whether "the differences in state laws within each of their groupings [were] nonmaterial" and whether the individual issues in the case, such as the symptoms and injuries allegedly suffered by the plaintiffs and whether they had seen the Paxil advertisements, were "an overarching barrier to class action treatment." (*Id.* at pp. 545, 548.) The court explained, in part, "questions regarding typicality merge into questions regarding adequacy. . . . [T]he ability of an individual to recover against GSK will likely turn on issues of actual causation. The determination of these issues is by necessity a process that requires a focus on the individual plaintiff and no class representative can possibly represent such individual plaintiffs without encountering a conflict of interest somewhere along the line. These conflicts make the class representatives and class counsel, despite their apparent best intentions, inadequate under Rule 23(a)(4)." (*Id.* at p. 550.) Notwithstanding its "grave doubts about the viability of any multi-state class action proposal," the court granted the plaintiffs leave to file "one more" class certification motion. (*Id.* at p. 554.)

### b. Paxil II

On March 24, 2003 the plaintiffs filed a second motion for class certification proposing only two classes. The equitable relief class consisted of California residents who took prescribed Paxil after December 29, 1992, and sought injunctive relief prohibiting certain GSK advertising statements and restitution pursuant to section 17200. (*Paxil II, supra*, 218 F.R.D. at p. 244.)[3]

---

[3] The other proposed class was a general causation issues class comprised of 215 California residents who had experienced one or more specified symptoms and would litigate the capacity of Paxil to cause the complained-of symptoms. (*Paxil II, supra*, 218 F.R.D. at pp. 244, 248.)

The district court again denied the motion for class certification. (*Paxil II*, at p. 245.) The court explained its general concern about the nature of the putative class, "The putative Plaintiffs have all consumed Paxil, but the similarities end there. Not all of them have suffered adverse consequences and the ones that have suffered such consequences may have done so because of reasons unrelated to their ingestion of Paxil. . . . [S]ome Plaintiffs may never have seen or heard the statements sought to be enjoined or may have received medical advice from their physicians that would have counteracted GSK's allegedly deceptive statements. These differences would generally make a group unsuitable for class treatment for a number of reasons, not the least of which is the potential for conflicts of interest among the class members." (*Ibid.*, fn. omitted.)

Notwithstanding the court's negative description of the classwide claims, however, accepting the plaintiff's representations concerning the breadth of section 17200 (prior to its amendment by Proposition 64), the district court held "[t]here is no serious dispute that the proposed Equitable Relief Class meets Rule 23(a)'s numerosity and commonality requirements." (*Paxil II, supra*, 218 F.R.D. at p. 245.) Rather, class certification was denied because, focusing on the proposed class representatives themselves, the court concluded they had failed to satisfy Rule 23(a)(4)'s "adequacy requirement." "[T]he lack of cohesion that Section 17200 arguably allows raises the concern that a person who has not been affected in any way by the allegedly deceptive statements is given the responsibility of vigorously prosecuting an action seeking to enjoin those statements. The prospect is thereby raised that if this litigation were protracted, or if the possibility of restitution were eliminated, *see infra*, the vigor with which the class representatives might pursue this action may suffer." (*Paxil II*, at pp. 246–247, fn. omitted.)[4]

### c. Alvarez v. May Dept. Stores Co.

In what appears to have been a case of first impression in California, the court in *Alvarez, supra*, 143 Cal.App.4th 1223, held the doctrine of collateral estoppel permits a prevailing party to enforce a ruling denying class certification, made in a prior action, against an absent putative class member seeking to pursue a class action. (*Id.* at p. 1236 ["When a prevailing party seeks to enforce a ruling denying class certification against an absent putative class member, the general principles of collateral estoppel apply"].) Prior to the

The plaintiffs' proposed trial plan included individual trials for each class member to prove his or her symptoms were caused by the discontinuation of Paxil, not by other medications or illnesses. (*Id.* at p. 248.) The district court's rationale for refusing to certify the general causation class is not relevant to the issues presented by Johnson's appeal.

[4] The district court also found it "problematic" whether the named representatives' claims were typical of those in the class. (*Paxil II, supra*, 218 F.R.D. at p. 246.)

lawsuit against it in *Alvarez*, the department store employer had twice defeated efforts to certify a class of past and present "area sales managers," who alleged the company had misclassified them as exempt employees and failed to pay required overtime compensation. In each of those earlier cases the trial court concluded the plaintiffs had failed to demonstrate a community of interest. (*Id.* at p. 1229.) The second denial of class certification was affirmed on appeal, the Court of Appeal holding " 'it would not be proper to certify plaintiffs as class representatives for a class whose members are so dissimilar in their interests. Common questions of fact could not predominate.' " (*Alvarez*, at p. 1229, quoting *Duran v. Robinsons-May, Inc.* (Apr. 18, 2003, E031288) [nonpub. opn.] (*Duran*).)

The *Alvarez* court held the *Duran* and *Alvarez* complaints each alleged the same general misconduct concerning the same policies and procedures, occurring over approximately the same period of time. The same putative class of present and former employees was alleged in both cases; and the *Alvarez* plaintiffs conceded they were, by definition, included within the putative *Duran* class. (*Alvarez, supra*, 143 Cal.App.4th at p. 1237.) The court also noted the *Duran* and *Alvarez* plaintiffs used the same attorneys. (*Alvarez*, at p. 1237.) Moreover, the *Alvarez* plaintiffs did not contend their interests were not adequately represented in the *Duran* case. (*Alvaraz*, at p. 1237.) Concluding that principles of collateral estoppel applied to preclude class certification of the *Alvarez* suit, the court held the *Duran* plaintiffs were "virtual representatives" of the *Alvarez* plaintiffs, emphasizing the "interested parties, their claims, and their counsel are the same." (*Alvarez*, at p. 1238.)

### 4. *The Trial Court's Order Granting Summary Adjudication in Favor of GSK on the Class Issues*

The trial court granted GSK's motion on March 29, 2007, ruling the district court's denials of class certification in *Paxil I* and *Paxil II* collaterally estopped Johnson from proceeding with a class action. The trial court stated, "The *In re Paxil* court twice considered and rejected a class identical to the one [Johnson] seeks. *Alvarez* and principles of collateral estoppel bar [Johnson] from again pursuing certification." Johnson filed a timely notice of appeal. (See *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 907 [142 Cal.Rptr. 527] ["an order, whatever form it may take, which has the effect of denying certification as a class action, is an appealable order"]; *Alvarez, supra*, 143 Cal.App.4th at p. 1228, fn. 2.)

## DISCUSSION

### 1. *Standard of Review*

The trial court's application of the doctrine of collateral estoppel or issue preclusion is a question of law subject to de novo review. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 [73 Cal.Rptr.3d 3].) Although *Paxil I* and *Paxil II* are decisions by a federal court, because the district court was exercising diversity jurisdiction, California law determines their preclusive effect. (See *Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 508 [149 L.Ed.2d 32, 121 S.Ct. 1021]; see also *Taylor v. Sturgell* (2008) 553 U.S. ___, ___ & fn.4 [171 L.Ed.2d 155, 128 S.Ct. 2161, 2171 & fn. 4] ["[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits"].)

### 2. *The Doctrine of Collateral Estoppel (Issue Preclusion) and Class Action Determinations*

#### a. *Collateral estoppel generally*

■ " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. ■ Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].)[5]

■ A prior decision precludes relitigation of an issue under the doctrine of collateral estoppel only if five threshold requirements are satisfied: "First,

---

[5] As the Supreme Court noted in *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at pages 896 to 897, footnote 7, traditionally the doctrine of res judicata defines the preclusive effect of a judgment in a prior proceeding in terms of both claim preclusion (at common law, merger and bar) and issue preclusion (collateral estoppel). (See, e.g., *Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 556 [90 Cal.Rptr.2d 469] ["The [res judicata] doctrine has two aspects. It applies to both a previously litigated cause of action, referred to as claim preclusion, and to an issue necessarily decided in a prior action, referred to as issue preclusion."].) To avoid confusion, the United States Supreme Court has recently opted to use only the terms "claim preclusion" and "issue preclusion," rather than "res judicata" and "collateral estoppel." (See *Taylor v. Sturgell, supra,* 553 U.S. at p. ___ & fn. 5 [128 S.Ct. at p. 2171 & fn. 5].) However, California usage, which we follow in this opinion, is to use the term "collateral estoppel" to refer to issue preclusion and "res judicata" to refer to claim preclusion. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 [272 Cal.Rptr. 767, 795 P.2d 1223] ["The doctrine of collateral estoppel is one aspect of the concept of res judicata. In modern usage, however, the two terms have distinct meanings."]; accord, *Mycogen Corp.,* at p. 896 & fn. 7.)

the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 341; accord, *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [38 Cal.Rptr.3d 220, 126 P.3d 1040]; see *Alvarez, supra,* 143 Cal.App.4th at p. 1233; see also *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 346 [29 Cal.Rptr.2d 314] ["[a]lthough a second action between the parties on a different cause of action is not barred by res judicata, nevertheless '. . . the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were *actually litigated and determined in the first action*" ' "].) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Lucido,* at p. 341; *Pacific Lumber Co.,* at p. 943.)[6]

Even if all these requirements are satisfied, however, a court must analyze the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular case. (*Pacific Lumber Co. v. State Water Resources Control Bd., supra,* 37 Cal.4th at pp. 943–944; *Lucido v. Superior Court, supra,* 51 Cal.3d at pp. 342–343.) "[I]n deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation." (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098]; accord, *Alvarez, supra,* 143 Cal.App.4th at p. 1233.)

### b. *Requirements for class certification*

■ Class actions are statutorily authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined

---

[6] California courts properly give preclusive effect to final decisions by federal courts. (See *Younger v. Jensen* (1980) 26 Cal.3d 397, 411 [161 Cal.Rptr. 905, 605 P.2d 813] ["federal judgment 'has the same effect in the courts of this state as it would have in a federal court' "]; *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1232 [57 Cal.Rptr.2d 303] ["[w]here dispositive factual issues are actually litigated and resolved in the federal action, the losing party is estopped to relitigate those issues in a subsequent state action"].)

community of interest among class members." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].) Similar to the commonality, typicality and adequacy of representation requirements of rule 23,[7] "[t]he 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, Inc.*, at p. 326.)

" 'The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent.' [Citation.] '. . . To assure "adequate" representation, the class representative's personal claim must not be inconsistent with the claims of other members of the class.' " (*J. P. Morgan & Co., Inc. v. Superior Court* (2003) 113 Cal.App.4th 195, 212 [6 Cal.Rptr.3d 214]; accord, *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 697 [66 Cal.Rptr.3d 300].) Similarly, the purpose of the typicality requirement " 'is to assure that the interest of the named representative aligns with the interests of the class. [Citation.] " 'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.' " [Citations.] The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." ' " (*Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1502 [57 Cal.Rptr.3d 903].)

■ "A class action also must be the superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " ' "

---

[7] "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 613 [138 L.Ed.2d 689, 117 S.Ct. 2231]; accord, *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 460, fn. 5 [64 Cal.Rptr.3d 773, 165 P.3d 556].)

(*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 14:16, p. 14-13 [benefits of class action evaluated by (1) interest of each putative class member in controlling his or her case personally; (2) potential difficulties in managing a class action; (3) nature and extent of already pending litigation by individual class members involving the same controversy; and (4) desirability of consolidating all claims in a single action before one court].)

### c. *Principles of collateral estoppel apply to relitigation of class action determinations*

■ If all five elements required for application of collateral estoppel are present, the doctrine is fully applicable to preclude relitigation of issues finally resolved as part of a class certification determination in a prior proceeding. (See *Alvarez, supra,* 143 Cal.App.4th at p. 1236; *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1202–1203 [76 Cal.Rptr.3d 804] [explaining *Alvarez,* but reversing trial court's application of collateral estoppel because, in light of differences in class definition, defendant employer failed to establish the issue sought to be precluded from relitigation was identical to that decided in the former proceeding].) For example, if a putative class representative, after unsuccessfully litigating a class certification motion, simply dismisses his or her lawsuit without prejudice and then refiles it (either in the same or different county) and once again seeks class certification for the identical class, general principles of collateral estoppel will preclude relitigation of the class issues. The same result will obtain if the second putative .class action lawsuit is pursued by a named representative in privity with the original, unsuccessful putative class representative.[8]

---

[8] As a general principle of due process of law, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (*Hansberry v. Lee* (1940) 311 U.S. 32, 40 [85 L.Ed. 22, 61 S.Ct. 115].) This general rule is not applicable, however, when a preexisting substantive legal relationship exists between a party to the judgment and the party to be bound, a relationship traditionally referred to as "privity." (See *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at p. 875 [traditionally "[p]rivity . . . has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase"]; Rest.2d Judgments, § 62, com. a, p. 125 ["[A] person standing in one of a variety of pre-existing legal relationships with a party may be bound by a judgment affecting that party. These relationships are often referred to as involving 'privity.' "].)

In *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at page 875, the Supreme Court observed the concept of privity is "not readily susceptible of uniform definition" and explained it has been expanded by case law to include "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." (See also *Citizens for Open Access etc. Tide,*

■ To be sure, California has a strong public policy that encourages the use of the class action procedure. (*Sav-On Drug Stores, Inc. v. Superior Court,*

---

*Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070 [71 Cal.Rptr.2d 77] [" ' "Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the . . . party in the first action. [Citations.] The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication." ' "].)

As discussed, the court in *Alvarez v. May Dept. Stores Co., supra,* 143 Cal.App.4th 1223 held a prevailing party may enforce a ruling denying class certification against an absent putative class member under general principles of collateral estoppel. Relying on California cases addressing the expanding notion of privity, none of which arose in a class action context, as well as a decision by the United States Court of Appeals for the Seventh Circuit (*In re Bridgestone/Firestone, Inc., Tires Products* (7th Cir. 2003) 333 F.3d 763) involving a prior class action determination, the *Alvarez* court explained, "Collateral estoppel requires that the party in the earlier case have interests sufficiently similar to the party in the later case, so that the first party may be deemed the 'virtual representative' of the second party." (*Alvarez,* at p. 1236.) Emphasizing that the *Alvarez* plaintiffs did not claim their interests were not adequately represented in the earlier *Duran* case (*Alvarez,* at p. 1237), the court found the *Duran* plaintiffs were the "virtual representatives" of the *Alvarez* plaintiffs and concluded applying the doctrine of collateral estoppel was proper: "[T]he *Duran* plaintiffs had a full opportunity to present their case. The circumstances are such the appellants should reasonably have expected to be bound by the *Duran* decision. As appellants would have enjoyed the fruits of a favorable outcome, fairness dictates that they should be bound by the effect of the decision against them." (*Alvarez,* at p. 1238.)

As Johnson contends, the *Alvarez* court's emphasis on the absence of any challenge to the adequacy of the representation by the named plaintiffs in the earlier *Duran* case raises the question whether the denial of class certification may be enforced against an absent putative class member when, as here, the basis for the earlier determination was that the named representatives could not adequately represent the putative class. (See also *In re Bridgestone/Firestone, Inc., Tires Products, supra,* 333 F.3d at p. 769 ["[a]bsent class members are bound provided that the named representatives and their lawyers furnished adequate representation, which they did"].)

Additional questions regarding the *Alvarez* court's virtual representation analysis are potentially raised by the United States Supreme Court's recent decision in *Taylor v. Sturgell, supra,* 553 U.S. ___ [128 S.Ct. 2161]. The Supreme Court rejected a broad doctrine of virtual representation (see 553 U.S. at p. ___ [128 S.Ct. at p. 2175] ["we have endeavored to delineate discrete exceptions that apply in 'limited circumstances' "]) and, instead, grouped into six categories the recognized exceptions to the general rule against nonparty preclusion. (See 553 U.S. at p. ___ [128 S.Ct. at pp. 2172–2173].) Only the third category—representative suits—is applicable to cases involving absent putative class members. As to this exception the Court explained, "we have confirmed that, 'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit. [Citation.] Representative suits with preclusive effect on nonparties include *properly conducted class actions* [citation], and suits brought by trustees, guardians, and other fiduciaries." (*Ibid.,* italics added.) In further discussing the limitations on nonparty preclusion based on a notion of adequate representation, the Supreme Court held, "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned [citation]; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty [citation]. In addition, adequate

*supra,* 34 Cal.4th at p. 340; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 473 [174 Cal.Rptr. 515, 629 P.2d 23].) " ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." ' " (*Sav-On Drug Stores, Inc.,* at p. 340.) At the same time, as our colleagues in Division Four explained, it would be "manifestly unfair to subject [a defendant] to a revolving door of endless litigation. In cases . . . where a party had a full opportunity to present his or her claim and adequately represented the interests of a second party who seeks the same relief, principles of equity, ' "[p]ublic policy and the interests of litigants alike require that there be an end to litigation." ' " (*Alvarez, supra,* 143 Cal.App.4th at p. 1240.)

3. *The Trial Court Erred in Ruling Collateral Estoppel Precluded Johnson's Efforts to Pursue His Section 17200 Paxil Claim As a Class Action*

 a. *The issue of adequacy of representation actually litigated and determined in* Paxil II *is not identical to the adequacy or typicality issues presented by Johnson's putative class claim*

The propriety of class certification was actually and necessarily litigated in *Paxil I, supra,* 212 F.R.D. 539 and *Paxil II, supra,* 218 F.R.D. 242, and the district court's orders denying certification were final and on the merits. However, even if we were to accept, as did the trial court, the Alvarez court's application of the doctrine of "virtual representation" to enforce a ruling

representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented [citation]. In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." (553 U.S. at p. \_\_\_ [128 S.Ct. at p. 2176], fn. omitted.) Emphasizing its rejection of a notion of virtual representation that authorizes preclusion based on identity of interests and some kind of relationship between parties and non-parties "shorn of the procedural protections prescribed" in the class action rules, the court noted those protections are "grounded in due process." (*Ibid.*)

 The protections for absent class members prescribed by rule 23, of course, are afforded after a motion for class certification has been granted, not by the filing of a motion for certification that is denied. Similarly, the concept of a "properly conducted class action" suggests a class action that has been certified, following a hearing in which the named representatives have established they satisfy the requirements of rule 23, and then litigated to judgment or settled, not a individual lawsuit in which a motion for class certification was denied. Literally (and narrowly) read, therefore, *Taylor v. Sturgell, supra,* 553 U.S. \_\_\_ [128 S.Ct. 2161] would appear to preclude the use of collateral estoppel to bar absent putative class members from seeking class certification following the denial of a certification motion in an earlier lawsuit—at least to the extent *Taylor* is understood as resting on due process considerations, and not simply federal common law. Because we reverse the trial court's application of collateral estoppel on different grounds, however, we leave resolution of these important issues to another day.

denying class certification against an absent putative class member not otherwise in privity with the named representatives involved in the earlier litigation (see *Alvarez, supra,* 143 Cal.App.4th at pp. 1236–1237; but see fn. 8, *ante*), only four of the five required elements for application of collateral estoppel are present in this case. The first requirement—identity of the issue to be precluded from relitigation—is missing.[9]

■ "Being a matter of *issue* preclusion, collateral estoppel is naturally confined to issues 'actually litigated.' [Citations.] [¶] A corollary is that the issue decided previously be 'identical' with the one sought to be precluded. [Citations.] [¶] Accordingly, where the previous decision rests on a 'different factual and legal foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied." (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1516–1517 [38 Cal.Rptr.2d 612]; see *United States Golf Ass'n v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 617–618 [81 Cal.Rptr.2d 708].) Precisely defining the issue previously decided and the one sought to be precluded is critical.

■ Both *Paxil I* and *Paxil II* were litigated before the voters approved Proposition 64 on November 2, 2004 (effective the following day), which significantly restricted the previously broad standing requirements for pursuing a private cause of action under section 17200. Prior to their amendment by Proposition 64, section 17200 and related provisions permitted any person acting for the general public to sue for relief from unfair competition and did not predicate standing on a showing of injury or damage. (See *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227–228 [46 Cal.Rptr.3d 57, 138 P.3d 207]; *Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 812 [66 Cal.Rptr.3d 543].) As amended by Proposition 64, Business and Professions Code section 17204 now limits standing in a section 17200 action to certain specified public officials and to "any person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition."[10]

---

[9] In its petition for rehearing, which we have denied, GSK correctly notes the court may refer to the entire record, as well as other extrinsic evidence, not simply the first court's written decision, to determine what issues were actually and necessarily decided in the earlier case. (See generally 7 Witkin, California Procedure (5th ed. 2008) Judgment, § 417(1), p. 1062 [entire record in the first action may be admitted for the purpose of determining what issue was decided by the judgment].) However, when, as here, the first court expressly defines the issue it is deciding, we are not permitted to examine the record of the earlier proceeding and preclude litigation of issues that were raised and either could or should have been addressed in the first proceeding, but were not.

[10] Proposition 64 also amended Business and Professions Code section 17203 to provide that, other than public officials, a person may pursue representative claims or claims on behalf of others only if the representative plaintiff complies with Code of Civil Procedure section 382, governing class actions.

In *Paxil II* the plaintiffs relied upon pre-Proposition 64 standing concepts to argue section 17200 "unifies the otherwise disparate Plaintiffs by broadly defining the cause of action and by allowing individuals to sue as 'private attorney generals.' . . . Plaintiffs allege that the California statute, by focusing on whether the Defendant has made misleading statements, dispenses with the need to determine whether those statements ultimately made it to the end-consumer in an unaltered form. Under Plaintiffs' reading, then, Section 17200 allows one who has never been exposed to the allegedly deceptive statements, and who might have received accurate instructions from his physician, and even benefitted from Paxil, to not only be a part of a class, *but to actually represent the class.*" (*Paxil II, supra,* 218 F.R.D. at pp. 245–246, italics added.)

The district court "assume[d] for the purposes of the class certification that Section 17200 ha[d] the broad scope that Plaintiffs ascribe[d] to it." (*Paxil II, supra,* 218 F.R.D. at p. 246.) Based, in part, on that assumption the court concluded there was "no serious dispute that the proposed Equitable Relief Class [met] Rule 23(a)'s numerosity and commonality requirements" (*id.* at p. 245)—the federal law analogue to California's class requirements of numerous parties and common questions of law or fact. Nonetheless, focusing on the putative class representatives themselves,[11] the district court denied class certification because individuals who had not seen or heard GSK's allegedly deceptive statements would not be adequate representatives of the putative class: "[T]he lack of cohesion that Section 17200 arguably allows raises the concern that a person who has not been affected in any way by the allegedly deceptive statements is given the responsibility of vigorously prosecuting an action seeking to enjoin those statements. The prospect is thereby raised that if this litigation were protracted, or if the possibility of restitution were eliminated, . . . the vigor with which the class representatives might pursue this action may suffer." (*Paxil II,* at pp. 245–247, fn. omitted.)[12]

---

[11] In its ruling granting GSK's motion for summary adjudication, the trial court stated, "[T]he *In re Paxil* court's adequacy determination was not premised on any particular characteristic of the named plaintiffs, but on the potential conflicts of interest inherent in any class certified under the plaintiffs' broad formulation of a § 17200 class." To the extent the trial court understood *Paxil II, supra,* 218 F.R.D. at pages 246 to 247 as determining no putative class representatives could represent the class proposed, including potential plaintiffs who had seen or heard the allegedly deceptive, non-habit-forming advertisements prior either to taking or attempting to stop using Paxil, and who thereafter suffered serious withdrawal symptoms, we believe it simply misread Judge Pfaelzer's decision.

[12] As noted, the court also questioned whether the putative class representatives' claims were "typical" of those in the class, once again based on the likelihood individuals who had never seen or heard the challenged advertisements and who, in fact, may not have suffered any adverse effects from having taken Paxil sought to represent a diverse class of Paxil users. (*Paxil II, supra,* 218 F.R.D. at p. 246; see fn. 4, *ante.*) Although terming this point

Unlike the claims of the named plaintiffs in *Paxil II*, Johnson's post-Proposition 64 section 17200 claim based on GSK's allegedly deceptive advertising of Paxil as non-habit-forming must be based on an allegation of injury in fact and lost money or property as a result of GSK's unfair competition.[13] (Bus. & Prof. Code, § 17204.) Indeed, contrary to the district court's description of the named plaintiffs in *Paxil II* as individuals who may never have been exposed to the allegedly deceptive statements,[14] Johnson alleged he had seen the television advertisements and heard the radio advertisements stating Paxil had few side effects and was not addictive. Thus, in no small part because of the significant change in the legal landscape in which section 17200 claims may be asserted as a result of Proposition 64,[15] the single issue on which the district court denied class certification in *Paxil II* is materially different from the issue of adequacy of representation presented by Johnson's attempt to pursue a section 17200 class action on behalf of Paxil users. (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 342 [" 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same"].)[16] It is not simply, as GSK contends, a matter of whether the broad class description and legal theories were the same in the two cases.

---

"problematic," the district court did not base its decision to deny class certification on it; thus, the issue of "typicality" was not finally adjudicated on the merits, as required for application of collateral estoppel.

[13] Section 17200 defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's false advertising law (Bus. & Prof. Code, § 17500 et seq.)]."

[14] Relying on material submitted by GSK in this proceeding, the trial court observed that one of the named class representatives in *Paxil II, supra*, 218 F.R.D. 242, advised the district court he had seen an advertisement that Paxil was non-habit-forming. The sole issue actually decided by the district court, however, and therefore the only issue as to which collateral estoppel may properly be applied, is that plaintiffs who may never have been exposed to the allegedly deceptive statements will not adequately represent the proposed class.

[15] The California Supreme Court is currently considering whether each member of a proposed class, or only the class representative, must have suffered "injury in fact" in a class action under section 17200 and whether each member of a proposed class must have relied on the manufacturer's representation in order to bring a class action based on alleged misrepresentation of a product. (*In re Tobacco II Cases*, review granted Nov. 1, 2006, S147734█; *Pfizer, Inc. v. Superior Court*, review granted Nov. 1, 2006, S145775; *McAdams v. Monier, Inc.*, review granted Sept. 19, 2007, S154088.)

[16] Noting an injury-in-fact standing requirement based on Article III of the United States Constitution was applied by federal courts to plaintiffs asserting section 17200 claims prior to adoption of Proposition 64 (see, e.g., *Lee v. American Nat'l Ins. Co.* (9th Cir. 2001) 260 F.3d 997, 1001–1002), in its petition for rehearing GSK argues the *Paxil II* putative class representatives asserted they had standing to pursue their claims because they had encountered the allegedly deceptive, non-habit-forming advertisements, just like Johnson. We do not question the accuracy of GSK's summary of the evidentiary material and arguments presented

The district court's denial of class certification in *Paxil I, supra,* 212 F.R.D. 539 similarly does not preclude determination of the class issues in this case because *Paxil I* focused on—that is, actually litigated and decided—the propriety of certifying a nationwide class of Paxil users. (*Id.* at pp. 542, 545, 548.) That question, of course, is not presented by Johnson's putative class action on behalf of California consumers of Paxil. (See *Bufil v. Dollar Financial Group, Inc., supra,* 162 Cal.App.4th at pp. 1203–1204 [reversing trial court's application of collateral estoppel to denial of class certification when subsequent class proposed was subset of class denied certification and attempted to cure deficiencies of denied class].) The footnote suggestion by the *Paxil I* plaintiffs that the district court should consider certifying a subclass of California plaintiffs under section 17200 did not elevate the issue to one that was actually litigated. Indeed, that suggestion appears, in part, to have been the basis for the court's allowance of a renewed attempt by the plaintiffs to certify a more limited class in *Paxil II.*

> b. *The primary rights theory does not permit application of collateral estoppel absent an identity of issues actually and necessarily litigated and finally decided on the merits*

In *Alvarez, supra,* 143 Cal.App.4th 1223, responding to the plaintiffs' argument the denial of class certification in the earlier *Duran* case should not preclude litigation of the class issues because the causes of action asserted in the two complaints differed—the *Alvarez* plaintiffs included a classwide section 17200 cause of action among their wage and hour claims, which was apparently not asserted in *Duran*—the court held, "Although the causes of action are not identical, the principle of collateral estoppel does not depend on the legal theory used but the primary right asserted. [Citations.] The primary right asserted in each case was the right to litigate claims in a class action lawsuit." (*Alvarez, supra,* 143 Cal.App.4th at p. 1237.)

Relying on *Alvarez,* GSK argues the primary right asserted in *Paxil I* and *Paxil II,* on the one hand, and the case at bar, on the other hand, is the same—the right to litigate claims involving Paxil in a class action lawsuit— and that the differences in the issues actually litigated discussed in the preceding section of this opinion are immaterial to the application of collateral estoppel. The trial court, as well, quoted the *Alvarez* court's language regarding primary rights in rejecting Johnson's argument that identity of issues does not exist because rule 23, which governed the class determinations in *Paxil II,* purportedly differs from Code of Civil Procedure section 382.

---

to the district court in *Paxil II,* but the fact remains the court decided the class certification issue on the express premise the named representatives were individuals who may never have been exposed to the allegedly deceptive statements.

That application of collateral estoppel does not depend on the legal theory advanced in the successive lawsuits is well established. (See, e.g., *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181 [257 Cal.Rptr. 37] [" 'former judgment is not a collateral estoppel on *issues which might have been raised but were not;* just as clearly, it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not*' "]; *Bufil v. Dollar Financial Group, Inc., supra,* 162 Cal.App.4th at p. 1202.) But that principle, central to the collateral estoppel doctrine, is in no way related to the primary rights theory, "a theory of code pleading" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083]), that implicates matters of claim preclusion (res judicata), not issue preclusion or collateral estoppel. (See *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593] [under California's primary rights theory, even when there are multiple legal theories upon which recovery might be predicated, "the invasion of one primary right gives rise to a single cause of action"; "[a] valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action"]; see also *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 897 [doctrine of res judicata promotes judicial economy by ensuring "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date"].)[17]

Moreover, the procedural right to prosecute a claim as a class action, "a means to enforce substantive law" by collectively litigating substantive claims (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 918 [103 Cal.Rptr.2d 320, 15 P.3d 1071]; see *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 388 [19 Cal.Rptr.3d 29]), shares none of the characteristics of a "cause of action" as defined by the primary rights theory. (See *Crowley v. Katleman, supra,* 8 Cal.4th at p. 681 [primary rights theory "provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty"].) A primary right in its simplest form is the plaintiff's right to be free from the particular injury suffered. (*Slater v. Blackwood, supra,* 15 Cal.3d at p. 795.) The procedural means for protecting that right cannot be confused with the right itself.

---

[17] The two cases cited by the *Alvarez* court in its discussion of the primary rights theory and collateral estoppel—*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977 [95 Cal.Rptr.2d 837] and *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427 [203 Cal.Rptr. 638]—are both res judicata cases. Both hold that res judicata bars relitigation of the same cause of action by the same parties and that the definition of a cause of action for this purpose depends, not on the legal theory or label used, but on the primary right sought to be protected in the two actions. (*Balasubramanian,* at p. 991; *Johnson,* at p. 432.) Neither case addresses the separate doctrine of collateral estoppel (issue preclusion).

 In sum, the primary rights theory does not relieve the party asserting collateral estoppel from its obligation to demonstrate the issue actually litigated and finally decided in the first action, regardless of legal theory advanced, is identical to the factual issue as to which preclusion is sought. GSK failed to carry that burden.

### 4. *Conclusion*

To avoid possible uncertainty as to the reach of our reversal of the trial court's order granting GSK's motion for summary adjudication, we emphasize we are not deciding Johnson has established the existence of both an ascertainable class and a well-defined community of interest among class members. (See *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913].) Similarly, we do not hold that Johnson's claims or GSK's potential defenses to those claims are typical of the class or that Johnson has proved he can adequately represent the class. (See *ibid.*) Those issues are properly considered by the trial court in a motion for class certification. All we decide today is that Johnson's attempt to pursue his section 17200 claim against GSK as a class action is not precluded by the doctrine of collateral estoppel.

### DISPOSITION

The order granting summary judgment on the class certification issues is reversed. Johnson is to recover his costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied October 14, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was filed December 23, 2008, S167892. Werdegar, J., and Corrigan, J., did not participate therein.