Filed 6/24/14  Lusk v. Baker CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LA VERNE LUSK, | B241890 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC056327) |
| v. | |
| RICHARD M. BAKER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Judith A. VanderLans, Judge.  Affirmed.

Law Offices of George T. Kelly and George T. Kelly for Plaintiff and Appellant.

Thompson Coe & O'Meara, Frances M. O'Meara and Stephen M. Caine for Defendant and Respondent.

_____

La Verne Lusk appeals from the trial court's judgment dismissing as untimely her legal malpractice complaint against Attorney Richard M. Baker, whom she alleged mishandled her workers' compensation claim. We affirm.

## FACTS AND PROCEEDINGS

Appellant La Verne Lusk worked as a Delta Airlines flight attendant for 20 years until she retired from the airline in 1993. In June 2002, appellant saw Dr. Michael Gray for her exposure to toxic chemicals while working as a flight attendant. In a medical report dated June 18, 2002, Dr. Gray wrote that appellant claimed work-related exposure to:

> "machine and cutting oils, solvents, degreasers, cleaning fluids, paints and varnishes, coatings, gasoline and other fuels, certainly jet fuel, insect, rodent and weed killers, other chemical liquids or vapors, gasses and by-products thereof, smoke from burning materials, engine exhaust and carbon monoxide, loud noises and vibration, extremes of heat and cold, heavy lifting, long-term standing, repetitive motions all day, job stress and pressure, infectious materials, x-rays from materials carried in the hold, and radioactive materials as well. [¶] She lists as significant exposures during the course of her work including carbotransport materials, high altitudes, cigarette smoke, and aircraft oils and other hazardous materials. She did eat on the plane and wore protective gear when advised including a respirator and face mask in her training for emergency evacuations. After 1993, these things were available, prior to that, they were not. [¶] *She indicates that she feels the problems associated with* her immune system, nervous systems, hearing, diabetes, eyes, memory loss, bones and muscle problems, in her belief, *are all related to the exposures sustained while working* as a flight attendant, including the ingestion of the methanol." (Italics added.)

2

Notwithstanding Dr. Gray's report that appellant attributed her symptoms to her work as a flight attendant, appellant did not pursue a workers' compensation claim in 2002. Instead, two years later in 2004, appellant saw Dr. Gary Ordog for her exposure to toxic chemicals while working as a flight attendant. According to appellant, upon consulting with Dr. Ordog she learned from him for the first time in December 2004 that her medical symptoms were related to her on-the-job exposure to toxic chemicals.

Two months later in February 2005, appellant met respondent Richard Baker and told him about Dr. Ordog's December 2004 medical findings. The following month on March 16, 2005, appellant retained respondent to represent her in pursuing a workers' compensation claim against Delta Airlines.[1] Over two years later in September 2007, respondent filed appellant's application for workers' compensation benefits for her work-related injuries caused by "Exposure to noxious/toxic aircraft cabin air contaminants."

During the administrative hearing in May 2009 on her application for benefits, appellant testified that Dr. Ordog, whom she met in 2004, was the first doctor with whom she discussed any connection between her medical symptoms and her employment. Contrary, however, to her testimony in the administrative hearing, appellant had previously testified in her pre-hearing deposition "that both Dr. Ordog and Dr. Gray told her that her physical problems were related to her work as a flight attendant." Additionally, Delta Airlines impeached appellant during the hearing with Dr. Gray's June 2002 report, in which she indicated to him that she felt her symptoms were related to her work-related exposure to toxic chemicals.

---

[1] The parties dispute when appellant retained respondent, but we rely on the allegations of appellant's first amended complaint because this appeal is from judgment on the pleadings of that complaint. (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 ["Review of a judgment on the pleadings requires the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action. For purposes of this review, we accept as true all material facts alleged in the complaint. Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion."].)

The administrative law judge presiding over the hearing disbelieved appellant's assertion about when she learned of the connection between her work and her symptoms. He found appellant learned of the connection when she met Dr. Gray in June 2002, not when she met Dr. Ordog in 2004. The administrative law judge's findings stated: "Applicant became aware of the industrial relationship between her medical condition(s) on or about (at least) June 18, 2002, when she was seen by Michael Gray, M.D. [¶] Applicant was later seen by Gary Ordog, M.D., in 2004 and thereafter filed her Application for Adjudication of Claim. [¶] Applicant's testimony as to her date of knowledge of the industrial relationship to her condition(s) was not convincing and tended to be 'selective'." Because appellant waited more than one year to file her application for benefits after acquiring "knowledge of the industrial relationship of her condition(s) to her work," the administrative law judge found her application was untimely.

Appellant filed with the Workers' Compensation Appeals Board a petition for reconsideration. In her petition, which she filed in pro per, she argued Dr. Gray's 2002 report described an old injury from her ingestion of methanol, but Dr. Ordog's December 2004 report covered new injuries. In support of her petition, she submitted a letter written by Dr. Gray in June 2009. He wrote that his examination of appellant in 2002 was "related to the methanol ingestion that had occurred [in 1987]. [¶] At that time, I was not privy to information that later came forward relating to additional toxic exposures that were contributing factors to her neurologic injury. [¶] . . . [¶] There is nothing in [my records] that would suggest that I had concluded that there were illnesses or toxins at play that related to anything other than the methanol exposure." Appellant summarized the contents of Dr. Gray's letter as "confirm[ing] that prior to December 2004, only old claim issues (methanol injury) were discussed. The new claim diagnosed by Dr. Gary Ordog on December 7, 2004 are the only issues" which the Workers' Compensation Appeals Board ought to consider.

The Workers' Compensation Appeals Board denied appellant's petition for reconsideration. The board noted that the law attached great weight to the administrative

4

law judge's finding that appellant lacked credibility because of her "selective" testimony about when she learned of the connection between her employment and her injuries. The board found that Dr. Gray's and Dr. Ordog's findings described a "cumulative" injury of which appellant first learned when saw Dr. Gray in June 2002. The board thus affirmed the administrative law judge's ruling that appellant's application for workers' compensation benefits was untimely.

In June 2010, appellant filed her complaint alleging legal malpractice by respondent Baker. Filed as a limited civil case, her complaint's sole substantive allegation was the following: "On September 14, 2007, [respondent] undertook to prosecute an action in Worker's Compensation on behalf of [appellant]. At said time, [respondent] knew or should have known that the applicable statute of limitations had run on the said action and that no viable cause of action existed. Nonetheless, [respondent] prosecuted the action thereby causing [appellant] to expend funds in support of her claim and ancillary thereto."

Respondent moved for summary judgment. He argued appellant had first consulted with him in September 2007, at which time she told him about Dr. Ordog's December 2004 report, but not Dr. Gray's June 2002 report. His motion further argued that he learned while investigating appellant's application for workers' compensation benefits that she had met with Dr. Gray, but Dr. Gray did not disclose his June 2002 report despite respondent's subpoena to Dr. Gray for all of the doctor's records involving his care of appellant. He learned about Dr. Gray's June 2002 report during the workers' compensation administrative hearing when Delta Airlines used it to impeach appellant's testimony on when she learned about a connection between her employment and her symptoms. It was, according to respondent, appellant's impeachment during the hearing that resulted in the administrative law judge's ruling denying her benefits on the ground her application was untimely.

Appellant opposed respondent's motion for summary judgment. In her response to respondent's separate statement of undisputed material facts, which she filed in pro per, she acknowledged as undisputed that she first consulted with respondent in

5

September 2007 – thereby contradicting her first amended complaint, filed three months later in which she alleged she retained respondent in March 2005.**2** She also acknowledged as undisputed that she told respondent she first learned her symptoms were work-related from Dr. Ordog in December 2004. She further accepted as undisputed that Dr. Gray's June 2002 report was used to impeach her testimony about when she learned of the connection between her work and her symptoms. And finally, she asserted that "Regardless of when [she] may be said to have had knowledge of her injuries, 2002 or 2004, [her] workers' compensation claim was statutorily time-barred at the time [respondent] agreed to be retained by [her] in 2007."

After filing her opposition to respondent's motion for summary judgment, appellant amended her complaint. The court denied the motion as moot.**3** She moved her action from a court of limited jurisdiction to one of general jurisdiction. Additionally, she added allegations addressing the date she retained respondent. Her original complaint was arguably ambiguous by alleging that in September 2007 respondent "undertook to *prosecute* an action in Workers' Compensation on behalf of" appellant, without specifically stating the date that appellant *retained* respondent.**4** (Italics added.)

---

**2**    Appellant attributes the contradiction to the attorney who supposedly filed her response to the separate statement, but appellant filed her response in pro per.

**3**    Because the court did not grant respondent's motion for summary judgment, appellant contends we should not take the motion into account, but appellant cites no authority to support that contention.

**4**    Respondent interprets appellant's allegation as meaning appellant retained respondent in September 2007, but that reads too much into the allegation. Read carefully, the allegation discusses when respondent began to pursue appellant's workers' compensation claim, but does not specifically address when appellant retained respondent. In full, appellant's allegation states: "Defendant, Richard M. Baker is an attorney licensed to practice law in the State of California. On or about September 14, 2007, Defendants undertook to prosecute an action in Worker's Compensation on behalf of Plaintiff. At said time, Defendants knew or should have known that the applicable statute of limitation had run on the said action and that no viable cause of action existed. Nonetheless, defendants prosecuted the action thereby causing Plaintiff to expend funds

6

Her first amended complaint ended the ambiguity by alleging she retained respondent on March 16, 2005, three months after Dr. Ordog informed her in December 2004 of the connection between her employment and her symptoms. But, according to appellant, respondent negligently waited until 2007 to file appellant's application for workers' compensation benefits, a delay which made the application untimely.

Respondent thereafter moved for judgment on the pleadings. Noting the implication of appellant's amended allegation of when she retained respondent, respondent wrote "Rather than claim that [the workers' compensation application] should not have been filed because it was time-barred [as she alleged in her original complaint, appellant] now claims that it was not time barred. She attempts to blame its dismissal for untimeliness on [respondent because] he did not file it fast enough after he was retained. [¶] To allege this, [appellant] changed the date she alleges that she retained" respondent. Respondent argued appellant's amended complaint established that the statute of limitations for her workers' compensation claim expired before appellant retained him. He noted that the workers' compensation proceedings had found that appellant learned of the connection between her symptoms and her work when Dr. Gray examined her in June 2002. Thus, the statute of limitations for her workers' compensation claim expired one year later in June 2003. The trial court agreed, and entered judgment on the pleadings for respondent without leave to amend, finding that collateral estoppel barred appellant's complaint. This appeal followed.

## DISCUSSION

Appellant's first amended complaint alleged respondent agreed to represent her in her workers' compensation case on March 16, 2005. The statute of limitations for an employee to file a workers' compensation claim is one year from the time the employee knew, or reasonably should have known, about a link between the employee's job and

in support of her claim and ancillary thereto. Within the year last past, Defendants ceased to represent Plaintiff."

7

symptoms. (Lab. Code, §§ 5405, subd. (a), 5412, 3208.1; *City of Fresno v. Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 467, 471 [whether an employee knew or should have known injury was industrially caused is a question of fact].) Thus, if appellant's workers' compensation claim had accrued more than one year before she retained respondent in March 2005, her compensation claim was already time-barred under the one-year statute of limitation when she retained him. Consequently, any delay attributable to respondent in filing appellant's application for workers' compensation benefits was not the proximate cause of her failing to recover workers' compensation benefits. Here, the administrative law judge found that appellant learned of a connection between her work as a flight attendant and her symptoms no later than June 2002. Thus, her time to file for workers' compensation benefits ended in June 2003. Accordingly, respondent was not responsible for the untimeliness of her application for benefits.

The trial court granted judgment on the pleadings because it found appellant was collaterally estopped from relitigating June 2002 being the date when she learned about the connection between her work and her symptoms.[5] The trial court ruled correctly. Collateral estoppel, which is also known as issue preclusion, applies when five elements are satisfied. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Johnson v. GlaxoSmithKline, Inc., supra,* 166 Cal.App.4th at pp. 1507-1508.) Those elements were satisfied here. The

---

[5] The trial court also found res judicata, also known as claims preclusion, barred appellant's complaint for legal malpractice. Because appellant's workers' compensation claim against former employer Delta Airlines involved a different party and different cause of action from her claim for legal malpractice against respondent, we decline to address res judicata's application here. (See *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507, 1516-1517 [res judicata bars "relitigation of the same cause of action in a second suit between the same parties or parties in privity with them"].)

same issue was involved: When did appellant learn of the connection between her work and her symptoms? The workers' compensation proceedings fully litigated that issue in a proceeding in which appellant fully participated, reaching a final decision on the merits. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 190, p. 623 ["The rule of issue preclusion, sometimes referred to as collateral estoppel . . . is that a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion."].) Accordingly, appellant cannot state a cause of action for legal malpractice against respondent because whether one relies on her first amended complaint, in which she alleges she retained respondent in March 2005, or her earlier admission in her opposition to summary judgment, in which she acknowledges as undisputed that she first met with respondent in September 2007, her application for benefits was time-barred as of June 2003, well before she retained respondent (be it in March 2005 or September 2007).

Appellant contends respondent negligently failed to argue in the workers' compensation proceedings that Dr. Gray's June 2002 report covered only her symptoms from ingesting methanol. According to appellant, Dr. Ordog's December 2004 report covered new and different work-related symptoms from toxins other than methanol, thereby triggering a new accrual date by which to apply for workers' compensation benefits. In principle, exposure to different toxins might constitute more than one compensable work-related injury. (*General Dynamics Corp. v. Workers' Comp. Appeals Board* (1999) 71 Cal.App.4th 624, 626-627 [pulmonary disease caused by exposure to ammonia and asbestos].) But the record does not support that principle's application here. The administrative law judge received both Dr. Gray's 2002 report and Dr. Ordog's 2004 report into evidence. Thus, the distinction, if any, to be drawn between the nature of the injuries was laid before the administrative law judge. Also, appellant testified in the administrative hearing that she first learned in December 2004 about a connection between her symptoms and her job from Dr. Ordog. But the administrative law judge discredited her testimony as "selective." She appealed the administrative law judge's adverse ruling to the Workers' Compensation Appeals Board. Pursuing that appeal in pro per, appellant told the board that Dr. Ordog's 2004 report involved new

9

work-related symptoms and Dr. Gray's June 2002 report covered only "old claim issues (methanol injury)." The board nevertheless affirmed the administrative law judge's finding. Appellant cannot show the causation element of malpractice if she made the same arguments that she asserts respondent should have made, for she offers only speculation that respondent would have succeeded where she failed. The remedy for the administrative law judge's and Workers' Compensation Appeal Board's purportedly wrongful rejection of her application for benefits was a judicial appeal from their purported error, not a malpractice action against respondent.

*Ruffalo v. Patterson* (1991) 234 Cal.App.3d 341, 344 is distinguishable. There, an attorney negligently advised his client in a marital dissolution to characterize her separate property as community property, a characterization the court adopted. (*Id.* at pp. 342-343.) In the client's later malpractice action against the attorney, the attorney cited the court's ruling that the property was community property as binding on the client under collateral estoppel, thereby barring the malpractice action. (*Id.* at p. 343.) On appeal, the *Ruffalo* court rebuffed the attorney's reliance on collateral estoppel. The *Ruffalo* court reasoned that a negligent attorney cannot use a court's adoption of an attorney's negligently-made argument as a bar to the client's malpractice complaint against the attorney for having made that argument. (*Id.* at p. 343.) Here, in contrast, the two medical reports were before the administrative law judge and appellant in pro per argued to the Workers' Compensation Appeals Board that Dr. Ordog's 2004 report involved new symptoms unrelated to her ingestion of methanol, but the board rejected her argument.

## DISPOSITION

The judgment is affirmed. Respondent to recover his costs on appeal.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.                                                    FLIER, J.

10