Filed 6/8/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SCOTT WILLIAMS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>U.S. BANCORP INVESTMENTS, INC., et al.,<br><br>     Defendants and Respondents. | A156226<br><br>(City & County of San Francisco Super. Ct. No. CGC10499011) |

In a class action, an order denying certification to a proposed class does not preclude an absent member of the putative class from later seeking to certify an identical class in a second action. (*Smith v. Bayer Corp.* (2011) 564 U.S. 299, 312–316 (*Smith*); *Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041–1044 (*Bridgeford*).) In this case, we are called upon to decide a closely related question: whether collateral estoppel bars an absent member in a putative class that was initially certified, but later *decertified,* from subsequently pursuing an identical class action. We conclude that the rule of *Smith* and *Bridgeford* applies equally in this context. Accordingly, we reverse the trial court's order dismissing plaintiff's class claims and compelling arbitration of his individual claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The* Burakoff *Action*

Two lawsuits are at issue here. The first of them, *Burakoff et al. v. U.S. Bancorp* (Super. Ct., L.A. County, 2008, No. BC341430) (*Burakoff*), was

1

a class action brought in the Los Angeles County Superior Court in 2005 by Robert Burakoff and Mohamed Alakozai, seeking restitution of overtime wages and wage deductions, waiting time penalties, and meal and rest breaks. In the *Burakoff* action, the named plaintiffs alleged they worked for U.S. Bancorp. Subclass A was those "who worked more than 40 hours in a week or 8 hours in a day, but did not receive overtime pay," and Subclass B was those who were illegally required to bear the cost of their business expenses.

On May 8, 2008, the Los Angeles County Superior Court granted Burakoff and Alakozai's motion for class certification, certifying a class of "[a]ll individuals who are or were employed by Defendant as Investment Financial Consultants in the State of California" for a period running through the date of the order, and certifying the two requested subclasses. The court ordered that notice be given to class members.

### Williams Files the Present Action

The plaintiff in the present action, Scott Williams, joined U.S. Bancorp as a financial consultant in May 2007. He immediately became a member of the *Burakoff* putative class, and presumably received notice after that class was certified the following year. Then on April 23, 2010, he filed his own class action against U.S. Bancorp Investments, Inc. and U.S. Bancorp (collectively, U.S. Bancorp) in the San Francisco Superior Court, similarly alleging causes of action for unpaid overtime, unpaid meal-period premiums, unpaid rest-period premiums, unpaid business expenses, wages not timely paid, non-compliant wage statements, and unfair business practices. He alleged U.S. Bancorp employed him as a financial advisor and investment financial consultant, which are commission-paid positions. His complaint proposed a class period beginning the day after the *Burakoff* class period

2

ended, and two subclasses consistent with those in *Burakoff*: (1) the "Unpaid Wages Subclass," defined as "All commission paid employees who worked for Defendants in California from May 9, 2008 until the date of certification," and (2) the "Unreimbursed Business Expenses Subclass," defined as "All employees of Defendants who paid for business-related expenses, including expenses for assistants, client or prospect beverages or meals, or cell phone expenses, in California from May 9, 2008 until the date of certification."

U.S. Bancorp demurred to the first amended complaint on the ground Williams was part of the certified class in the *Burakoff* action then pending in the Los Angeles Superior Court. The trial court determined Williams's case was "founded upon the same primary rights, states substantially the same causes of action, and involves substantially the same parties" as the *Burakoff* action, and so it stayed the case until the proceedings in *Burakoff* concluded.

### *Decertification and Settlement in* **Burakoff**

After the parties in *Burakoff* engaged in extensive discovery around class issues, U.S. Bancorp moved to decertify the class. In May 2011, the Los Angeles Superior Court granted the motion as to Subclass A, decertifying this overtime subclass on the ground its alleged members lacked sufficient commonality. The court concluded it would be required to conduct numerous case-by-case inquiries into such matters as the amount of time the individual class members spent on various job duties and their level of autonomy in carrying out their work in order to determine whether each individual member fell within various exemptions from state and federal overtime pay laws. The court denied the motion as to Subclass B, allowing the claims for unreimbursed business expenses to go forward on a class-wide basis.

The following year, the parties settled *Burakoff*. The named plaintiffs agreed to release all their claims against U.S. Bancorp, and the members of

3

Subclass B released their claims for unpaid business expenses. The trial court approved the settlement agreement and entered judgment accordingly. Williams participated in the *Burakoff* settlement and received compensation as a member of Subclass B. But he did not, nor did any of the other absent members of alleged Subclass A, release his wage and hour claims.

### *Arbitration Demand and Earlier Appeal*

U.S. Bancorp then demanded in the present action that Williams drop his class claims and arbitrate his individual claims. U.S. Bancorp cited an agreement Williams had signed that required arbitration of individual disputes and that prohibited arbitration of claims alleged as class claims until class certification had been denied, or the class decertified.[1] When Williams did not agree to arbitrate his individual claims, U.S. Bancorp brought a motion to compel arbitration and to dismiss the first amended complaint. It argued the *Burakoff* decertification order collaterally estopped Williams from relitigating the appropriateness of class certification because he was a member of the *Burakoff* class, and because the two cases raised substantially the same claims and identical class certification issues. Williams agreed to the dismissal of his claim for unpaid business expenses only.

---

[1] Specifically, Williams had signed a "Form U4" at the outset of his employment, which included an agreement to arbitrate claims against U.S. Bancorp "under the rules of the self-regulatory organizations with which you are registering." The applicable Financial Industry Regulatory Authority's Code of Arbitration Procedure for Industry Dispute (FINRA rules) prohibits enforcement of an arbitration agreement against "a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action" until, inter alia, certification is denied or the class is decertified. (Former FINRA rule 13204(d) [now FINRA rule 13204(a)(4)].)

4

The trial court initially denied U.S. Bancorp's motion to compel arbitration and dismiss the remaining class claim, concluding that *Burakoff's* Subclass A and the putative class in this case were not identical. They were comprised of different class members during different time periods, so collateral estoppel did not apply, the trial court ruled.

U.S. Bancorp appealed, and a different panel of this division affirmed the trial court's order. (*Williams v. U.S. Bancorp Investments, Inc.* (June 27, 2016, A141199) [nonpub. opn.] (*Williams I*).) We noted that no record had yet been developed in connection with a motion for class certification, and concluded that U.S. Bancorp had not met its burden to show that the job duties of members of the *Burakoff* class were identical to those of the current putative class, covering a later period, or that any differences between the *Burakoff* class and the proposed class were immaterial.

### The Present Dispute

On remand, U.S. Bancorp renewed its motion to compel arbitration of Williams's individual claims after conducting discovery relevant to class certification. The trial court granted the motion on October 25, 2018, concluding that a class decertification order may have collateral estoppel effect, and that the decertification order in *Burakoff* barred Williams's claims because facts developed in discovery showed brokers' job duties and time spent performing those duties were materially the same during both class periods. On November 21, 2018, the trial court dismissed Williams's class claims with prejudice, and then added that it was making no "order regarding the class claims of absent putative class members."

## DISCUSSION

### I. Appealability—Death Knell Doctrine

A threshold question is whether the order compelling plaintiff to arbitrate his individual claims is immediately appealable. Normally, an order compelling arbitration may be challenged only in an appeal from the ensuing judgment. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121–1122.) But an exception to this rule is found in the death knell doctrine.

According to this doctrine, " 'an order which allows a plaintiff to pursue individual claims, but prevents the plaintiff from maintaining the claims as a class action, . . . is immediately appealable because it "effectively r[ings] the death knell for the class claims." ' " (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 200; accord *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759 (*Baycol Cases*).) An order directing a plaintiff to arbitrate his or her claims individually, rather than pursuing class claims in court, falls within the scope of the death knell doctrine. (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766.)

The scope of the death knell doctrine is limited, however. When an order does not terminate an action's class claims entirely, but merely limits the scope of the class or the claims available, the order does not act as a death knell and is not immediately appealable. (*Baycol Cases*, *supra*, 51 Cal.4th at pp. 757–758.) This may occur, for instance, when a trial court certifies a class of a lesser size than requested. (*General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 249, 251 [court certified statewide, rather than nationwide, class]; *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [court decertified only a portion of class]; *Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692, 694, 697 [certification order limited class to 469

6

members].)  It may also occur when the court denies class certification of only some causes of action (*General Motors*, at pp. 250–251, citing *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806–807), or when other representative claims remain (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8–9; *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 634–635).  Where no other representative claims are pleaded, the "determinative issue is whether any 'viable class claim remains pending in the trial court' after the challenged order."  (*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1068.)

U.S. Bancorp argues the death knell doctrine is inapplicable here because the trial court expressly "d[id] not make an order regarding the class claims of absent putative class members."  Thus, U.S. Bancorp contends, the order merely limits the scope of the putative class by removing plaintiff from it, without affecting the class claims of other putative class members.

This argument is unpersuasive for two reasons.  First, Williams is the only named plaintiff in this case.  No other purported class members are present to assert class claims.  Thus, the effect of the order terminating Williams's class claims is to terminate the action as a class action, leaving no viable class claims pending.  (*Baycol Cases*, *supra*, 51 Cal.4th at pp. 757–758.)

Second, the trial court's statement that it made no order regarding absent class members has no legal significance.  Having refused to certify the class, the trial court *could* make no ruling that would bind absent members of the purported class.  (See *Bridgeford*, *supra*, 202 Cal.App.4th at p. 1044.)  The trial court's comment, effectively denying U.S. Bancorp's request that the court dismiss the class claims of absent class members without prejudice, merely acknowledged the limits of the trial court's authority.  Nothing about the court's refusal to enter a meaningless order alters the scope of the order it

7

did enter, which dismissed all pending class claims and allowed plaintiff to proceed only on his individual claims.

Because this order was immediately appealable under the death knell doctrine, we now turn to the merits of the appeal.

## II. Collateral Estoppel Effect of Decertification Order

The trial court concluded that, as a member of the certified class in the *Burakoff* action, Williams was bound by the order decertifying Subclass A of that class. Williams makes two challenges to this ruling: first, that collateral estoppel does not apply to orders decertifying a class as a matter of law; and second, that even if collateral estoppel may apply to such an order, it does not apply in this case. Because we agree with Williams on the first point, we have no occasion to discuss the second.

### A. General Principles

Class certification requires proof of three things: (1) " 'a sufficiently numerous, ascertainable class,' " (2) " 'a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods.' " (*Bridgeford*, *supra*, 202 Cal.App.4th at p. 1041.) The required community of interest exists when common questions of law or fact predominate, the class representatives have claims and defenses typical of the class, and the class representatives can adequately represent the class. (*Ibid*.) This community of interest and, in particular, evidence that common questions of law or fact predominate, is what the *Burakoff* court found was missing with regard to Subclass A.

Collateral estoppel, or issue preclusion, bars relitigation of issues argued and decided in a prior proceeding. (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497 (*Johnson*).) Five threshold requirements must

8

be met: " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Id.* at pp. 1507–1508; *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1326.) Even if these threshold requirements are met, a court may look " 'to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting.' " (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943–944; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343 *(Lucido)*.) In particular, " 'courts will not apply the doctrine . . . if the party to be estopped had no full and fair opportunity to litigate the issue in the prior proceeding.' " (*Bridgeford, supra,* 202 Cal.App.4th at p. 1042.) The parties dispute whether Williams was a party to, or in privity with, the named plaintiffs in *Burakoff,* such that he had a full and fair opportunity to litigate class certification in that case.

U.S. Bancorp, as the party asserting collateral estoppel, has the burden of establishing it. (*Johnson, supra,* 166 Cal.App.4th at p. 1508.) And because the trial court's application of collateral estoppel is a question of law, our review is de novo. (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 179; *Johnson,* at p. 1507.)

### B. Collateral Estoppel Effect of Order Denying Certification

The question before the court is whether these claim preclusion principles may operate to preclude an unnamed class member in a first action from relitigating the question of class certification in a second action, if the

9

trial court in the original case certified but then decertified a class. We begin by reviewing the law on a closely related question, to wit, whether the unnamed class member may relitigate certification in a subsequent case if the original trial court simply denied class certification, rather than first certifying and later decertifying the class.

A line of cases has considered, and ultimately resolved, this simpler question. California courts initially adopted the view that an order denying class certification could preclude absent members of a putative class from relitigating certification in a subsequent case. (*Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1233–1238; *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1202, disapproved on another ground in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15; see *Johnson, supra*, 166 Cal.App.4th at p. 1510, fn. 8 [noting rule of *Alvarez* and expressing reservations].)

Then the United States Supreme Court weighed in, reaching the opposite conclusion as a matter of federal common law. *Smith* held that putative class members in a case where the court refused to certify a class are not bound by that decision; they may relitigate certification in a subsequent case. (*Smith, supra*, 564 U.S. at pp. 312–316.) This conclusion was a specific application " 'of the general rule' that only parties can be bound by prior judgments," a principle the Court called " 'fundamental.' " (*Id.* at p. 313, citing *Taylor v. Sturgell* (2008) 553 U.S. 880, 898 (*Taylor*).) The Court acknowledged a few well-established exceptions to this general rule, most importantly that unnamed class members in a " 'properly conducted class action[]' " are bound by a judgment when they bring subsequent litigation. (*Smith*, at p. 314, citing *Taylor*, at p. 894.)

10

In *Smith*, the trial court in a prior case had refused to certify a comparable class because it found that individual issues predominated. (*Smith, supra*, 564 U.S. at p. 304.)  Final judgment was entered in the earlier case, but that judgment did not bind absent members of the putative class. The high court reasoned, "If we know one thing about the [prior] suit, we know that it was *not* a class action.  Indeed, the very ruling that Bayer argues ought to be given preclusive effect is the District Court's decision that a class could not properly be certified.  So Bayer wants to bind Smith as a member of a class action . . . to a determination that there could not be a class action." (*Id.* at p. 314.)  "In these circumstances," the Court explained, "we cannot say that a properly conducted class action existed at any time in the litigation." (*Id.* at p. 315.)

The Supreme Court rejected Bayer's argument that the named plaintiff in the prior case had been " 'act[ing] in a representative capacity when he sought class certification.' " (*Smith, supra*, 564 U.S. at p. 314.)  "Neither a proposed class action nor a rejected class action may bind nonparties," the Court emphasized.  (*Id.* at p. 315.)  "What does have this effect is a class action approved under [Federal Rules of Civil Procedure] Rule 23 [(Rule 23)]. But [the prior] lawsuit was never that." (*Smith*, at p. 315.)

Although *Smith* was decided under federal law, its reasoning has since been applied to class actions brought under California law.  In *Bridgeford*, the court found *Smith*'s reasoning persuasive and concluded, as a matter of California law, that "the denial of class certification cannot establish collateral estoppel against unnamed putative class members on any issue." (*Bridgeford, supra*, 202 Cal.App.4th at p. 1044.)  Following *Smith*, the *Bridgeford* court reasoned that unnamed members of the putative class in a prior proceeding "were neither parties to the prior proceeding nor represented

11

by a party to the prior proceeding so as to be considered in privity with such a party for purposes of collateral estoppel." (*Bridgeford*, at p. 1044.)

*Smith* and *Bridgeford* do not directly answer the question before us, but they light our way as we explore an issue of first impression in California.

### C. Collateral Estoppel Effect of Order Decertifying a Previously Certified Class

Williams characterizes this case as controlled by *Smith* and *Bridgeford*. He argues that as to Subclass A, *Burakoff* was both "a proposed class action" and "a rejected class action" not, in the end, a " 'properly conducted class action[]' " able to preclude absent class members from relitigating certification. (*Smith*, *supra*, 564 U.S. at pp. 314–315.) Taking the opposite view, U.S. Bancorp follows the trial court in relying on three facts said to distinguish this case from those precedents: that absent class members in *Burakoff* "were in fact parties, were in fact represented, and did in fact have an opportunity to litigate the certification issue." Focusing on Subclass A, we disagree on all three points.

First, we reject the view that absent class members in *Burakoff* were parties, for purposes of assessing that case's preclusive effects. As in *Smith*, we start with the general proposition that " '[a] "party" to litigation is "[o]ne by or against whom a lawsuit is brought" ' [citation], or one who 'become[s] a party by intervention, substitution, or third-party practice.' " (*Smith, supra*, 564 U.S. at p. 313.) Williams filled no such role in *Burakoff*. *Smith* went on to conclude that, as a matter of federal law, the "definition of the term 'party' can on no account be stretched so far as to cover a person . . . whom the plaintiff in a lawsuit was denied leave to represent." (*Smith*, at p. 313.) Here, Williams is a person whom, in the final analysis, Burakoff and Alakozai were denied leave to represent.

To the extent California law differs, it is even stricter than federal law in requiring formal intervention before an absent class member may be considered a party. For example, federal law considers "an unnamed member of a *certified* class" to be " 'a "party" for the [particular] purpos[e] of appealing' an adverse judgment," (*Smith, supra*, 564 U.S. at p. 313, quoting *Devlin v. Scardelletti* (2002) 536 U.S. 1, 7), but the California Supreme Court has long held the opposite view as a matter of California law. In *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, our high court reaffirmed that an unnamed member of a certified class is not a party with a right to appeal, unless the absent class member has filed a complaint in intervention (or an appealable motion to set aside class judgment). (*Id.* at pp. 263, 267, citing *Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201.) Similarly, absent class members are not parties for purposes of assessing diversity, for awarding defense costs, or for obligating class counsel to convey a settlement offer. (*Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal.App.4th 1441, 1460–1461.) Indeed, "[t]he very purpose of the class action is to 'relieve the absent members of the burden of participating' " as parties. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1434.) For that reason, for almost all purposes "unnamed parties are not considered 'parties' to the litigation," even after a class is certified. (*Hernandez v. Restoration Hardware, Inc.*, at p. 266.)

Second, we reject U.S. Bancorp's argument that Williams was adequately represented by class counsel in litigating whether *Burakoff's* Subclass A was properly certified. U.S. Bancorp points out that once a class is certified, class counsel have a duty to represent the interests of absent class members competently. (See *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 937.) But although Subclass A was certified for a period, it

13

was ultimately decertified.  Only final decisions have preclusive effect (*Johnson*, *supra*, 166 Cal.App.4th at p. 1508), and the final determination of the trial court in *Burakoff* was that proposed Subclass A could not properly be certified.  *Burakoff* produced a final judgment and therefore also a final ruling decertifying the subclass,[2] as the trial court correctly understood.  The trial court's mistake was to analyze collateral estoppel based on the original certification ruling, instead of from the perspective of this final ruling that decertified the subclass because common issues did not predominate.

This lack of common issues meant that *Burakoff*'s named plaintiffs and their attorneys may *not* have adequately represented Williams's interests.  In a "properly conducted class action[]," "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." (*Taylor*, *supra*, 553 U.S. at p. 894.)  But preclusion requires a "properly certified class" precisely "because only in those circumstances can the court in the later proceeding conclude that [prior class members'] interests were adequately represented in the prior proceeding." (*Bridgeford*, *supra*, 202 Cal.App.4th at pp. 1043–1044.)  Where, as here, the trial court in the prior proceeding determined that individual issues predominated over common ones, there could be no community of interest.  And where there is no community of interest, a later court can only speculate as to the extent to which the interests of the named plaintiffs and

---

[2] Although an order may be " 'sufficiently firm to be accorded conclusive effect' " before final judgment (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564), the facts of this case show the danger of according any such finality to an order addressing class certification.  A class once certified may be decertified, at least if there has been a change in the law or—as in *Burakoff*—newly discovered evidence.  (*Green v. Obledo, supra* 29 Cal.3d at p. 148; *Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1226.)

the absent class members conflicted or aligned. The mechanism of a class action serves to " 'insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.' " (*Richards v. Jefferson County* (1996) 517 U.S. 793, 801 (*Richards*).) Without this mechanism—i.e., where common issues do not predominate and no class remains certified—there is no such insurance.

Because *Burakoff's* Subclass A was, in the end, "a rejected class," no judicial finding that the named plaintiffs adequately represented the absent members of that subclass survived to become final. (*Smith, supra*, 564 U.S. at p. 315.) For that reason, the decisions of the *Burakoff* court can have no preclusive effect on the absent members of that subclass. (*Ibid*.; see also *Richards, supra*, 517 U.S. at p. 801; *Johnson, supra*, 166 Cal.App.4th at pp. 1510–1512, fn. 8 ["concept of a 'properly conducted class action' suggests a class action that has been certified . . . and then litigated to judgment or settled"].) U.S. Bancorp would have us simultaneously accord preclusive effect to the initial certification order finding that the representative plaintiffs and their counsel adequately represented absent members of Subclass A *and* to the later order reversing certification of that subclass. The inconsistency in this position should be apparent.

Third, we disagree with U.S. Bancorp and the trial court that Williams had an adequate opportunity to litigate class certification here. As we have seen, we cannot assume that Williams was adequately represented by class counsel in *Burakoff* with regard to his Subclass A claims. And as a nonparty he had no opportunity, once the trial court decertified Subclass A, to appeal that decertification ruling. (See *Hernandez v. Restoration Hardware, Inc., supra*, 4 Cal.5th at pp. 273–274.) In sum, we reject all three attempts by the

15

trial court and U.S. Bancorp to distinguish this case from *Smith* and *Bridgeford*.

Instead, we conclude the logic of *Smith* controls this case, even as we recognize a factual difference between the two cases. Williams, unlike the plaintiff in *Smith*, had notice of the prior class action and an opportunity to opt out. (Cf. *Smith*, *supra*, 564 U.S. at p. 304.) This difference is not dispositive, however, because Williams, believing *Burakoff* was properly handled as a class action, had no occasion to opt out. The fact that he remained an absent member of *Burakoff*'s Subclass A until the trial court decertified it does not change the fact that the *Burakoff* court ultimately concluded, on the basis of newly discovered evidence, that the sub-class was never proper. U.S. Bancorp now seeks to bind Williams "as a member of a class action . . . to a determination that there could not be a class action." (*Smith*, at p. 314.) As that was improper in *Smith*, so it is improper here. That the *Burakoff* court originally believed Subclass A met the standard for certification changes nothing, since in the final analysis it concluded otherwise.

In U.S. Bancorp's attempt to find federal authority[3] for the proposition that decertification is different, it overlooks the most closely analogous federal case. In *Thorogood v. Sears* (7th Cir. 2012) 678 F.3d 546 (*Thorogood*), the Seventh Circuit Court of Appeals also considered the preclusive effect of an order decertifying a class, and reached a conclusion similar to ours.

To simplify the procedural posture in *Thorogood* somewhat, plaintiff Thorogood brought a putative class action that was certified in the district court, but then decertified on appeal on the ground that there were no

_____

[3] "Where California courts have not addressed an issue, they look to federal cases as persuasive authority on class action questions." (*Collins v. Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 73, fn. 6.)

16

common issues of law or fact. An absent member of Thorogood's putative class, Murray, brought a copycat class action suit, which, at the direction of the appellate court, was enjoined as collaterally estopped by the judgment in the original suit. But the United States Supreme Court granted certiorari and directed the Seventh Circuit to reconsider the case in light of *Smith*. (*Thorogood, supra*, 678 F.3d at pp. 547–549.) In then concluding that Murray was not bound by the first judgment, the Seventh Circuit reasoned that a class action " 'existed' " for a time but was never " 'properly conducted,' for the class was decertified on appeal." (*Id*. at p. 551.) "If the district judge had, as we held he should have, refused to certify the class, there would be no obstacle to Murray's filing his own class action—and it would be odd if by virtue of a mistaken ruling by the district judge Murray is barred." (*Ibid*.)

Similarly in *Burakoff,* the trial court ultimately determined the unnamed class members did not have the community of interest necessary for class certification, and it would be "odd" if the court's originally mistaken ruling acted to bar Williams from bringing an action he otherwise was entitled to pursue.

U.S. Bancorp relies primarily on federal cases that apply collateral estoppel to decertification orders in collective actions brought under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), rather than class actions under Rule 23. But because of significant differences between FLSA cases and class actions—most notably that FLSA collective actions require members affirmatively to opt into the action—these cases are less helpful. (See *Belle v. University of Pittsburgh Med. Ctr.* (W.D.Pa. Sep. 29, 2014, Civil Action No. 13-1448) 2014 U.S.Dist.Lexis 136936 [vast majority of plaintiffs opted into previous FLSA action]; *Adkins v. Ill. Bell Tel. Co.* (N.D.Ill. Mar. 24, 2015, No. 14 C 1456) 2015 U.S.Dist.Lexis 40246, *19–32 [plaintiffs in joint

17

action had opted into earlier FLSA collective action]; but see *Velasquez v. Costco Wholesale Corp.* (C.D.Cal. July 14, 2011, No. SACV 11-508 JVS (RNBx)) 2011 U.S.Dist.Lexis 161590, *3, 9–11 [following *Smith* to find prior FLSA decertification order lacked collateral estoppel effect even for opt-in plaintiffs]; see also *Halle v. West Penn Allegheny Health Sys.* (3rd Cir. 2016) 842 F.3d 215, 224-225 [discussing differences between class certification under Rule 23 and conditional certification of collective action under FLSA].)

We conclude, therefore, that under California law, an order decertifying a class has no preclusive effect on absent class members. The trial court's order dismissing Williams's class claims with prejudice and compelling Williams's individual claims to arbitration must be reversed.

## DISPOSITION

The order dismissing class claims and compelling arbitration is reversed. The matter is remanded for further proceedings consistent with this opinion. Williams shall recover his costs on appeal.

_____

TUCHER, J.

I CONCUR:


_____

BROWN, J.

**POLLAK, P. J., Dissenting.**

I respectfully dissent. I do agree that the order in question is appealable under the death knell doctrine, but believe that the trial court properly applied the doctrine of collateral estoppel (or "issue preclusion") to deny class certification.

"[I]n deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation." (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 875, overruled on another ground in *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 131–132.) Here, Williams seeks to relitigate an issue previously considered at length in a prior proceeding in which he was at the time a member of a certified class represented by class counsel.

There is no dispute that a final determination made in a properly certified class action binds unnamed members of the class, and that collateral estoppel, or issue preclusion, precludes them from relitigating issues litigated and decided in that action. (*Taylor v. Sturgell* (2008) 553 U.S. 880, 894; *Cooper v. Federal Reserve Bank* (1984) 467 U.S. 867, 874; *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 694; *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1235; see generally 7 Witkin, Cal. Procedure (5th ed. 2020) Judgment, § 464.) The majority concludes that because the class in the prior *Burakoff*[1] litigation ultimately was decertified, *Burakoff* was not a "properly conducted class action" and, under the rationale

---

[1] *Burakoff v. U.S. Bancorp* (Super. Ct., L.A. County, 2008, No. BC341430) (*Burakoff*).

1

of *Smith v. Bayer Corp.* (2011) 564 U.S. 299 (*Smith*) and *Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034 (*Bridgeford*), rulings in that action do not have collateral estoppel effect. In my view, the majority focuses on the wrong point in time in concluding that the class in "in the end [was] 'a rejected class'" precluding application of collateral estoppel. (Maj. opn. *ante*, at p. 15.) The relevant time, I submit, is the point at which the decertification motion in *Burakoff* was argued and considered. At that point, the class had been certified and class counsel had been found to adequately represent the interests of all class members and authorized to act on their behalves. After the conduct of discovery, both sides fully presented the question of whether common issues predominate and, as the trial court's order in that case demonstrates, the court carefully and thoroughly considered that question. Under these circumstances, absent a material difference in the facts, there is no reason to give Williams, a member of the certified class when the issue was decided, a second bite at the same apple.

The fact that the class in *Burakoff* was ultimately decertified does not mean that Williams, as a class member, was not fairly and adequately represented when the predominance issue was considered and decided. *Smith* held that because the putative class in that case had never been certified, the court could not "say that a properly conducted class action existed *at any time* in the [prior] litigation." (*Smith, supra,* 564 U.S. at p. 315, italics added.) When our sister Court of Appeal followed *Smith* in *Bridgeford,* it denied collateral estoppel effect to the order in the prior litigation because the prior court had never certified a class, and so the unnamed members of the putative class were neither a party *nor represented by a party to the prior proceedings.* (*Bridgeford, supra,* 202 Cal.App.4th at p. 1044.) In *Burakoff*, in contrast, the court had certified a class of which Williams was a member,

2

after determining that class members' interests were the same and that class counsel adequately represented them. When the motion to decertify the class was argued and considered, both class counsel and the court bore a fiduciary obligation to act in the best interests of the class. (E.g., *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 266, 273.) Thus, unlike the situation in *Smith* and *Bridgeford,* Williams' interests were adequately represented when the court determined in the prior proceedings that common issues do not predominate.

The prior court's ultimate determination that common issues do not predominate was not a rejection of its earlier finding that the interests of class members do not differ or conflict, or that class counsel could adequately represent those interests. Rather, based on additional evidence, the court made a pragmatic determination that resolving the class claims will require more consideration of factual issues unique to each member than of issues common to all members of the class. The court's ruling was the final determination of that issue. As the majority acknowledge, "a prior adjudication may be sufficiently final to support preclusion if it 'is determined to be sufficiently firm to be accorded conclusive effect.' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 774, citing Rest.2d, Judgments, § 13.)

The fact that Williams was not a party entitled to appeal the predominance ruling is irrelevant. For policy reasons explained in *Hernandez* our Supreme Court has decided that, to obtain the right to appeal, an absent class member must either move to intervene or move to set aside the trial court's judgment. (*Hernandez v. Restoration Hardware, Inc., supra,* 4 Cal.5th at p. 267.) Neither this long-standing rule reaffirmed in *Hernandez* nor the reasons for the rule are inconsistent with the fundamental principle that class members whose interests have been represented by court-designated

3

class counsel are bound by resulting decisions in the action. Class members are bound by rulings on the merits of the class claims despite their inability to appeal those rulings. In my view there is no reason why they should not be equally bound by a ruling on the issue of predominance, made after exhaustive consideration was given to the issue in the prior proceedings.

The decision of the federal court in *Thorogood v. Sears* (7th Cir. 2012) 678 F.3d 546 not only is not controlling on this court, but also is plainly distinguishable. In that case, the decertification order in the prior proceedings was based on the fact that the class had been improperly certified in the first instance, so that counsel had *never* properly represented members of the putative class. Moreover, notice of the pendency of the putative class action was never given, so that the putative class member who brought the later action was never notified of his ability to opt out. (*Id.* at pp. 551–552.) Here, in contrast, there is no suggestion that the trial court erred in originally certifying the class and designating class counsel, and proper notice of the prior action, including presumably of the right to opt out, was given to all members of the class, including Williams. Thereafter, additional evidence led the court to determine that common issues do not in fact predominate, but that determination did not retroactively invalidate the prior designation of counsel to represent the class so long as the certification remained in effect.

For several reasons, denying Williams the right to relitigate this issue does not violate his right to due process. As just indicated, his interests (and the interests of the class) were properly presented and advanced in the prior proceedings by counsel authorized to act on behalf of the class. Williams had the right to request intervention had he wished to appeal that ruling, but he did not do so. And, in all events, he retains the right to pursue his personal

claim for relief; he has been denied only the right to pursue a claim on behalf of others, which is hardly a fundamental right warranting constitutional protection. (See, e.g., *Alvarez v. May Dept. Stores Co., supra,* 143 Cal.App.4th at pp. 1233–1234.)

Before the trial court's ruling applying collateral estoppel could be affirmed, it would be necessary to confirm that there is no material difference between the factual issues considered in *Burakoff* and those applicable in this case relating to the similarly described class in a subsequent time period. Since the majority does not reach this issue and the ruling is not to be affirmed, there is no need to expand on that question at length. Suffice it to say that, after careful review of the record before the trial court, I believe there was ample support for the court's conclusion that no material differences would justify denying application of collateral estoppel.

In short, the issue of predominance has been litigated in prior class action proceedings in which counsel fairly represented the class of which Williams was a member, and the court considered at length the contention that common issues predominate and rejected it. For all of the reasons underlying the doctrine of collateral estoppel (or "issue preclusion"), I would affirm the trial court's order.

_____
POLLAK, P. J.

Trial Court:               City & County of San Francisco Superior Court

Trial Judge:               Hon. Curtis E.A. Karnow

Counsel for Appellant:     Capstone Law APC, Ryan H. Wu; and John E.
                           Stobart

Counsel for Respondents:   K&L Gates LLP, Paul W. Sweeney, Jr.;
                           Christina N. Goodrich; Kate G. Hummel; and
                           Zach T. Timm

*Williams v. U.S. Bancorp Investments, Inc. et al.,* (A156226)