[Civ. No. 41484. Second Dist., Div. Five. Feb. 15, 1974.]

AMERICAN AIR EQUIPMENT, INC., Plaintiff and Respondent, v.
PACIFIC EMPLOYERS INSURANCE COMPANY,
Defendant, Cross-complainant and Appellant;
ROY J. BANKS et al., Cross-defendants and Respondents.

**COUNSEL**

Montgomery, Bottum, Regal & McNally and H. Vincent McNally for Defendant, Cross-complainant and Appellant.

Fred J. Martino for Plaintiff and Respondent.

No appearance for Cross-defendants and Respondents.

**OPINION**

**KAUS, P. J.**—This is an appeal by the defendant Pacific Employers Insurance Company from a judgment holding it liable to the plaintiff American Air Equipment, Inc., on a so-called Vehicle Dealer Bond, furnished pursuant to section 11710 of the Vehicle Code. The penal sum of the bond was the statutory $5,000. The judgment in favor of plaintiff and against the defendant bonding company was for $4,575.[1]

The basic facts are quite simple. The bonded dealer was Roy J. Banks, doing business as Banks Auto Sales. Plaintiff, who did business as Mac Motors, is a wholesale dealer in cars who sold vehicles to Banks. Most of the pertinent dealings were between one Palozie, the president of plaintiff, and one Tankersley, the manager of the Banks lot.

Between October 1968 and March 1969 Banks purchased a number of cars from plaintiff. In March 1969 when plaintiff stopped doing business with Banks, Banks had failed to pay for seven cars, the total price of which was about $7,000. In the process of appearing to pay for these cars Banks had given plaintiff a series of checks, none of which was honored. The total amount of worthless checks given to plaintiff considerably exceeded $7,000, the difference being due to the fact that some of the worthless checks were "made good" with other worthless checks.

The cars for which Banks did not pay were sold to third parties, although Banks, in each case, had agreed in writing that title to the cars would not pass to him "until final cash payment is made." Having been given the pink slips by plaintiff, he was in a position to nullify this provision.

Each sale of the unpaid-for cars was made on printed forms signed by or on behalf of Banks. These forms were furnished by plaintiff and all

---

[1]The State of California had a preferred claim for $425.

blanks—except, of course, the signature line—were filled in by one of plaintiff's agents.

Further details with respect to the transactions between the parties are furnished in connection with defendant's last contention on this appeal.

## ISSUES

Defendant makes three contentions:

1. That the provisions of section 11711, subdivision (a) of the Vehicle Code, as it read before the 1972 amendments to that section, precluded a licensed dealer from recovery on defendant's statutory bond;

2. Even if plaintiff can recover on the bond in spite of being a licensee, it did not have in its possession the type of written instrument required by section 11711, subdivision (a); and

3. There was no substantial evidence to support the trial court's finding that plaintiff's loss was occasioned by "fraud . . . or fraudulent representation . . . by a licensed dealer" as required by section 11711, subdivision (a).

## DISCUSSION

Section 11711, subdivision (a) of the Vehicle Code read as follows at the time of plaintiff's dealings with Banks: "If any person shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer or one of such dealer's salesmen acting for the dealer, in his behalf, or within the scope of the employment of such salesman; provided, [1] such person has possession of a written instrument furnished by the licensee, containing stipulated provisions and guarantees which the person believes have been violated by the licensee, or [2] shall suffer any loss or damage by reason of the violation by such dealer or salesman of any of the provisions of Division 3 of this code, or [3] if any person, other than a licensee, is not paid for a vehicle sold to and purchased by a licensee, such person shall have a right of action against such dealer, his said salesman, and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from or sold to the dealer."[2]

■ Defendant's first point is that plaintiff, a licensee of the Depart-

---

[2]The bracketed numbers [1], [2] and [3] do not appear in the statute. Each represents a proviso which qualifies the surety's duty to indemnify the victim of the principal's fraud.

ment of Motor Vehicles, cannot recover even under proviso 1, because it was not paid and proviso 3 makes recovery on the bond for nonpayment conditional on the victim not being a licensee.

Notwithstanding the array of authorities on the art of statutory interpretation cited by defendant, this contention disembowels the plain meaning of the statute. The general requirement of damage because of the principal's fraud is conditioned on three alternative provisos. The first proviso applies to any victim—"such person,"—if he has in his possession a written instrument which complies with certain further requirements of the proviso. The second proviso is irrelevant to this case. The third proviso is complied with if the victim has not been paid for a vehicle sold to the principal, provided that the victim is not himself a licensee.

The clear intent of the two provisos in question is this: if the victim has the necessary written instrument in his possession, he can recover on the bond if he is "any person" whom the principal has defrauded. "Any person" clearly includes licensees. On the other hand if the victim has no such written instrument, he may still recover for nonpayment of a vehicle sold to a licensee, unless he himself is a licensee.

The purpose of this distinction is plain: collusion between licensees at the expense of a bonding company is not beyond legislative imagination. Therefore if two licensees conspire to generate a little extra income by claiming that one has failed to pay for an automobile sold to the other, the alleged buyer must at least take the risk of creating the "false token or writing" required under certain conditions by section 1110 of the Penal Code. On the other hand, if the victim is not a licensee, the Legislature apparently felt that the need for protection outweighs the danger of collusive claims.

We note that the 1972 Legislature amended section 11711 in certain important respects. Since we do not wish to extend this opinion unnecessarily, we simply note that they throw no particular light on the issue now before us.

■ Defendant's second contention is that whatever written instruments plaintiff may have had in its possession, they did not comply with the requirements of the first proviso.

Defendant points out that the only documents in plaintiff's possession which might qualify are the checks or the purchase orders. We need not discuss defendant's arguments with respect to the checks, since the pur-

chase orders clearly satisfy the statute. That is precisely what was held in *Robinson* v. *Travelers Indem. Co.*, 219 Cal.App.2d 617, 622 [33 Cal. Rptr. 301]. Defendant's attempt to distinguish *Robinson* is circular: essentially it depends on the validity of its first contention, that licensees are not protected by section 11711, subdivision (a). Of course if that contention were valid, we would not need to go further.

Defendant also argues that the purchase orders were not "furnished" by Banks, because plaintiff provided the forms and filled in the blanks.

We have expressed our view that the purpose of the requirement of a written instrument in proviso 1 is to prevent collusion between licensees, by forcing one of the colluders to provide written evidence against himself. With that purpose in mind, it makes no difference whether it is the bonded principal or his alleged victim who buys the paper or does the clerical work of filling in the blanks describing the vehicle covered by the purchase order.[3]

Defendant's third contention has far more substance than the other two.

We held in *Beverly Finance Co.* v. *American Casualty Co.*, 273 Cal. App.2d 259, 265-268 [78 Cal.Rptr. 334], that the Legislature meant what it said when it used the words "fraud" and "fraudulent representation" in section 11711, subdivision (a).

In the case at bar defendant attacks the finding of fraud on all fronts. We have no trouble at all with any element except the one of detrimental reliance.[4]

The evidence was that in connection with each sale plaintiff gave Banks a pink slip to the vehicle. This, of course, enabled Banks to pass clear title to a purchaser. Thus Banks broke his promise that title would remain in plaintiff until final cash payment was made. The trial court could infer that at the time Banks gave worthless checks to the plaintiff, it was intended that plaintiff should believe that it had been paid and deliver the means to pass a good title to a bona fide purchaser in reliance on such belief.

---

[3]The fact is, that if collusion results in a criminal prosecution against both parties to the attempted or completed fraud, the People would be immeasurably helped by having the handwriting of each defendant on the instrument. (Pen. Code, § 1110.)

[4]On which issue plaintiff had the burden of proof. (*Elkind* v. *Woodward*, 152 Cal. App.2d 170, 175 [313 P.2d 66].)

The real problem is whether under all of the circumstances of this case such reliance was justified.

With full awareness of the restrictions imposed on this court by the substantial evidence rule, we have come to the reluctant conclusion that the record contains no substantial evidence of justifiable reliance, except with respect to the first check in issue, which was for the sum of $1,800 and dated October 31, 1968.

With respect to that particular check, plaintiff's representative, Mr. Palozie, did testify that he believed that the check was good. There is nothing in the record which would negative the reasonableness of that belief as of that time. The next dishonored check in issue was dated February 1, 1969, and was in the amount of $1,751.82. Palozie was never asked what he thought about that check. He did testify, however, that after November 5, 1968,—when the October 31 check was dishonored—he had continued to do business with Banks. However, while during that period he "might have accepted one or two checks, smaller checks on a smaller vehicle," he only accepted third-party checks, "in other words, finance company checks that . . . Banks endorsed off to us." After the February 1, 1969, check and March 17, 1969, the date of a third dishonored check, plaintiff and Banks continued to do business, but the cars were "paid for in a little bit different system . . . in that they were paid by cashier's check or something more solid." There were apparently other checks which plaintiff took from Banks during that time which did not clear until "maybe the second time around."

On March 17, 1969, Banks gave plaintiff a third check for $3,000. With respect to that check, Palozie did testify that he believed that it would clear. It did not. According to Palozie this was the check "that broke the camel's back." Nevertheless he later accepted three $1,000 checks to replace the March 17 check. None was paid.

With respect to the March 17 check for $3,000, Palozie never explained why, in view of his previous experience with Banks and his reluctance to deal with him on the basis of anything less "solid" than cashier's checks, he had any rational basis for believing that it would clear.

Under these circumstances we cannot affirm the judgment except as to the first check in the sum of $1,800.[5]

---

[5]We are all the more satisfied that the partial reversal which must follow is the correct disposition of this appeal, because it appears fairly clear from the record that the question of justifiable reliance was almost overlooked by plaintiff, who may

The judgment is reversed for the sole purpose of retrying the issue of plaintiff's reasonable reliance as to any sum in excess of $1,800. In all other respects the judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

have felt that it would not be to its advantage to stress that issue. This low-key approach was carried over into the findings prepared for the court's signature where the only reference to fraud appears in a long sentence which begins as follows: "The Court specifically finds that Plaintiff suffered a loss and damage *by reason of the fraud practiced* on it and *the fraudulent representation made to it by* BANKS AUTO SALES . . . ." (Italics added.)