Filed 5/6/22  Parish v. The Ohio Casualty Insurance Company CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DON E. PARISH, | |
| Plaintiff and Appellant, | E075135 |
| v. | (Super.Ct.No. CIVDS1717151) |
| THE OHIO CASUALTY INSURANCE COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Law Offices of Robert B. Mobasseri, Robert B. Mobasseri and David Alan Cooper for Plaintiff and Appellant.

Booth, Mitchel & Strange and Stacie L. Brandt for Defendant and Respondent.

1

# I. INTRODUCTION

In 2016, Don E. Parish (plaintiff) purchased a used vehicle from a licensed vehicle dealer (dealer). He subsequently discovered defects in the vehicle and that the vehicle had an unreported prior accident history. Plaintiff eventually filed a civil action against the dealer alleging causes of action for (1) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), (2) fraudulent concealment, and (3) violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.). Plaintiff also alleged a cause of action against the dealer's surety, Ohio Casualty Insurance Company (surety defendant) for liability on a surety bond pursuant to Vehicle Code[1] section 11711, subdivision (a).

The dealer moved to compel arbitration, the trial court granted the dealer's motion, and the litigation was stayed with respect to the cause of action between plaintiff and surety defendant. The arbitrator set the matter for an evidentiary hearing, held the hearing in the dealer's absence when the dealer failed to appear, and issued an award in favor of plaintiff. The remaining cause of action against surety defendant was tried in a court trial and resulted in a judgment in favor of surety defendant.

Plaintiff appeals from the judgment against him, arguing: (1) surety defendant should have been precluded from relitigating any issues decided in plaintiff's favor in the arbitration proceeding involving the dealer under the doctrine of collateral estoppel; (2) the trial court erred in "applying a common law fraud standard to his CLRA claim";

---

[1] Undesignated statutory references are to the Vehicle Code.

and (3) the trial court erred in determining that third-party vehicle history reports do not qualify as a "written instrument furnished by the licensee, containing stipulated provisions and guarantees which the person believes have been violated," within the meaning of section 11711, subdivision (a).

We conclude that plaintiff has forfeited any claims of error by failing to identify a standard of review or tailor any arguments to the appropriate standard of review on appeal. We further conclude that, even in the absence of forfeiture, the trial court did not err in declining to apply the doctrine of collateral estoppel against a surety and did not err in requiring plaintiff to prove actual fraud on the part of the dealer in order to recover against a surety under section 11711, subdivision (a). Finally, in light of these conclusions, we need not determine whether the trial court erred in its application of section 11711, subdivision (a)'s written instrument requirement because, even assuming the trial court erred, such error would not justify reversal of the judgment on appeal.

## II.  FACTS AND PROCEDURAL HISTORY

On September 5, 2017, plaintiff filed a civil complaint for damages arising out of the purchase of a used vehicle from the dealer. Plaintiff alleged three causes of action against the dealer, including (1) violation of the CLRA, (2) fraud, and (3) violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.). Plaintiff also alleged a cause of action against surety defendant for liability on its bond pursuant to Vehicle Code section 11711, subdivision (a). Surety defendant filed an answer to the complaint. However, the dealer filed a motion to compel arbitration of all claims against it.

On December 6, 2017, the trial court granted the dealer's motion to compel arbitration and stayed the litigation with respect to the remaining claim against surety defendant pending the arbitration proceedings.[2]  The dealer failed to appear at the time set for the evidentiary hearing in the arbitration proceedings; the hearing was held without the dealer's participation; and the arbitrator issued an award in plaintiff's favor. The trial court confirmed the award against the dealer and entered judgment against the dealer on April 5, 2019.

The cause of action against surety defendant proceeded in the trial court, and the matter was set for trial.  Surety defendant filed a motion in limine seeking to exclude evidence of the arbitration, arbitration award, and judgment against the dealer.  In opposition to this motion and in his trial brief, plaintiff argued that surety defendant was barred by the doctrine of collateral estoppel from relitigating any issues already decided in arbitration.  The trial court granted surety defendant's motion but held that evidence from the arbitration could be used for impeachment at trial.

Plaintiff was the only witness to testify in a one-day bench trial.  Plaintiff testified that he purchased a vehicle from the dealer.  Plaintiff testified that, in doing so, he relied on (1) oral assurances made by the dealer regarding the quality of the vehicle, (2) the dealer's internet advertisements that assured potential customers they could have "peace of mind" because all of the dealer's vehicles had been inspected, (3) and copies of two vehicle history reports generated by independent third parties provided by the dealer.  He

---

[2]  Plaintiff did not include the written submissions, oral record of proceedings, or written order of the trial court related to this motion as part of the record on appeal.

4

became dissatisfied with his purchase and believed the vehicle fell short of what the dealer represented. Plaintiff would not have purchased the vehicle if he had known its true condition.

On December 4, 2019, the trial court issued an intended statement of decision. With respect to the cause of action pursuant to section 11711, subdivision (a), against surety defendant, the trial court concluded that plaintiff met his burden to show loss or damage under the statute but failed to show fraud practiced on him by the dealer or that he was in possession of a written instrument from the dealer containing stipulations and guarantees within the meaning of the statute. The trial court's intended statement of decision became final and judgment was entered in favor of surety defendant on February 3, 2020. Plaintiff appeals from this judgment.

## III. DISCUSSION

A. *Plaintiff Has Forfeited His Claims on Appeal by Failing To Identify Or Tailor Arguments to Any Standard of Review*

" ' "Arguments should be tailored according to the applicable standard of appellate review." [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit.' " (*Ewald v. Nationstar Mortgage*, *LLC* (2017) 13 Cal.App.5th 947, 948, quoting *Sonic Manufacturing Technologies*, *Inc. v. AAE Systems*, *Inc.* (2011) 196 Cal.App.4th 456, 465.) " 'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.' " (*People v. Foss* (2007) 155 Cal.App.4th 113, 126.) Thus, "[w]hen an appellant fails to apply the appropriate standard of review, the

5

argument lacks legal force" and "the appellant fails to show error in the judgment." (*Ibid.*)

Here, plaintiff's briefs on appeal fail to identify the standard of review applicable to any of his claims of error. Simply claiming error in the abstract without reference to any standard of review or any argument designed to explain why, under the appropriate standard of review, any such error requires reversal of the judgment, does not meet plaintiff's burden on appeal. For this reason alone, plaintiff's claims must be deemed forfeited on appeal, and the appeal must be resolved against plaintiff. Additionally, as explained *post*, even in the absence of forfeiture, we would find no error warranting reversal.

B. *The Trial Court Did Not Err in Declining To Apply the Doctrine of Collateral Estoppel*

Plaintiff contends the trial court erred in permitting surety defendant to relitigate issues already decided in plaintiff's favor in the arbitration proceeding between plaintiff and the dealer. According to plaintiff, it should have been permitted to apply the doctrine of collateral estoppel offensively to preclude surety defendant from litigating any issues the dealer could have litigated, but failed to, in arbitration. We disagree.

"The trial court's application of the doctrine of collateral estoppel or issue preclusion is a question of law subject to de novo review." (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507; see *Roos v. Red* (2005) 130 Cal.App.4th 870, 878; see also *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) Generally, the doctrine of collateral estoppel will bar relitigation of an issue where there

6

has been (1) a final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit, and (4) the issue is asserted against one who was a party in the first suit or one in privity with that party. (*Meridian Financial Services*, at p. 686.)

With respect to matters litigated against a principal in arbitration, the Civil Code expressly provides that "[a]n arbitration award rendered against a principal alone shall not be, be deemed to be, or be utilized as, an award against his surety." (Civ. Code, § 2855.) The express purpose of this provision is to apply existing law applicable to prior judgments to arbitration awards. (*Ibid.*) Plaintiff acknowledges that this statute generally precludes a prior arbitration award against a principal from being directly enforced against a surety but claims that the statute is ambiguous as to "what additional steps must be taken by a plaintiff" and "what, if anything, must be retried in a subsequent trial against a surety." Contrary to plaintiff's characterization, the law appears well-settled on both of these points.

First, the law is clear that in order to avoid an inconsistent judgment, the plaintiff bears the burden of ensuring that both the principal and surety are joined in a single action. Long before the enactment of Civil Code section 2855, the California Supreme Court affirmed that "[a] judgment against the principal is not conclusive in a separate action against the surety." (*Kane v. Mendenhall* (1936) 5 Cal.2d 749, 751-752.) Thus, to avoid the risk of obtaining diverging judgments in separately tried actions, both the California Supreme Court and Courts of Appeal have cautioned that a plaintiff should join the principal and surety in a single suit. (*Kane*, at p. 757; *Dreher v. Fidelity &*

7

*Casualty Co.* (1957) 148 Cal.App.2d 695, 700-701; *Mahana v. Alexander* (1927) 88 Cal.App. 111, 116 (*Mahana*).)

For many years, joinder of the principal and surety in a single action was permitted but not required. (*Titus v. Woods* (1920) 45 Cal.App. 541, 546 [citing former version of Code Civ. Proc. holding that " '[p]ersons severally liable upon the same obligation . . . including . . . sureties on the same or separate instruments may all or any of them be included in the same action at the option of the plaintiff' "].) However, the Legislature has since amended the Code of Civil Procedure to require such joinder in actions seeking liability on a bond. (Code Civ. Proc., § 996.430, subd. (a); *National Technical Systems v. Commercial Contractors*, *Inc.* (2001) 89 Cal.App.4th 1000, 1006-1007.) Thus, contrary to plaintiff's characterization, the law is well settled with respect to "what additional steps must be taken by a plaintiff." A plaintiff must ensure joinder of both the principal and surety in a single action in order to avoid diverging judgments or arbitration awards.[3]

---

[3] We recognize that, in this case, the trial court granted a motion to compel arbitration over plaintiff's opposition, which created the risk of divergent outcomes with respect to the claims against the dealer and the claim against surety defendant. The Code of Civil Procedure expressly provides alternative options other than compelling arbitration in situations where "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions[,] and there is a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).) However, nothing in the record suggests plaintiff raised this issue in the trial court, and plaintiff has not challenged the trial court's decision with respect to the order compelling arbitration. (*Muao v. Grosvenor Properties*, *Ltd*. (2002) 99 Cal.App.4th 1085, 1088-1089 [An order compelling arbitration can be "reviewed on appeal from the judgment entered after the arbitration is completed or in exceptional circumstances . . . by writ of mandate."].)

Second, the law appears equally settled that, in the event a surety is not joined in a single action with the principal, then the surety is entitled to relitigate any issues relevant to its defense in a subsequent trial. Our Supreme Court has unambiguously stated that " '[s]urties on a bond have a legal right to avail themselves of all defenses that would be allowed the principal and are generally in no worse position than he would be if sued separately.' " (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 394.) Following this principle, the Courts of Appeal have repeatedly held that considerations of fundamental fairness require that a surety be afforded the opportunity to litigate any available defenses—including defenses that may have previously been unsuccessfully litigated by a principal. (*Mahana*, *supra*, 88 Cal.App. at pp. 121-122 [surety is "entitled to his day in court and to contest any attempt to fasten upon him an obligation he did not assume"]; *All Bay Mill & Lumber Co. v. Sur. Co.* (1989) 208 Cal.App.3d 11, 17-18 [even where principal and surety are sued in same action, surety is not bound by principal's default and "must be given an opportunity to be heard in defense"].)

As explained in *Nat'l Tech. Sys. v. Superior Court* (2002) 97 Cal.App.4th 415 (*Nat'l Tech. Sys.*), the " ' " 'surety undertakes in general terms that the principal will perform his official duty. They do not agree to be absolutely bound by any judgment obtained against the principal . . . . They are only held for a breach of their own obligations. It is a general principle that no party can be so held without an opportunity to be heard in defense. *This right is not divested by the fact that another party has defended on the cause of action and has been unsuccessful*. As the surety did not stipulate that *it* would be absolutely bound by the judgment against the principal or

9

permit [it] to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights.' " ' " (*Id.* at pp. 421-422.) Thus, it appears well established that principles of fundamental fairness require that a surety be afforded the opportunity to participate in the litigation of any available defenses.

Because the law recognizes that fundamental fairness requires a surety be given the opportunity to participate and litigate any available defenses, a surety lacks the required privity[4] with its principal to permit the doctrine of collateral estoppel to be applied in the manner urged by plaintiff. Absent privity, the doctrine of collateral estoppel does not apply, and the trial court did not err in concluding that surety defendant was entitled to litigate any issues relevant to its defense, even if previously litigated in arbitration between plaintiff and the dealer.

C. *Section 11711, Subdivision (a), Requires Proof of Actual Fraud by the Principal to Recover on a Bond*

Plaintiff also argues that, even if the doctrine of collateral estoppel could not be applied offensively, the trial court "erroneously applied a common-law fraud standard to the CLRA claim." We agree with surety defendant that this entire argument erroneously frames the issue. As we explain, once the issue is correctly understood, it is apparent the

---

**4** " 'Privity is not susceptible of a neat definition, and determination of whether it exists is not a cut-and-dried exercise. [Citations.] In the final analysis, the determination of privity depends upon the fairness of binding [a party] with the result obtained in earlier proceedings in which it did not participate.' " (*Citizens for Open Access etc.*, *Tide Inc. v. Seadrift Assn* (1998) 60 Cal.App.4th 1053, 1070.)

10

trial court did not err in applying a common-law fraud standard to the cause of action actually alleged against surety defendant: a claim for bond liability pursuant to section 11711, subdivision (a).

1. Plaintiff Incorrectly Frames the Issue as Liability Under the CLRA

Plaintiff's entire argument on appeal is focused on the question of what standard should be employed to prove liability under the CLRA. However, the only cause of action alleged against surety defendant in this case was one for bond liability under section 11711, subdivision (a).

The fact that plaintiff separately alleged the dealer's liability under the CLRA is irrelevant. " 'A surety bond is not an insurance policy.' " (*Schmitt v. Ins. Co. of N. Am.* (1991) 230 Cal.App.3d 245, 256; see *Lumbermens Mutual Casualty Co. v. Agency Rent-A-Car*, *Inc.* (1982) 128 Cal.App.3d 764, 769; see also *Cates Constructions*, *Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 48 ["[A] surety has no duty to protect the principal under a motor vehicle dealer's bond as if the principal were an insured under an insurance policy."].) "The bond does not insure the principal against liability." (*Schmitt*, at p. 257.) Thus, the fact that plaintiff may have a meritorious tort or contract claim against the dealer does not in itself establish a claim against the dealer's surety.

Instead, it is "settled that a surety is not liable for anything that extends beyond the letter of its contract. [Citations.] The surety's obligation is strictly construed so as not to impose a burden not contained in or clearly inferable from the language of the contract." (*Airlines Reporting Corp. v. United States Fidelity & Guaranty Co.* (1995) 31 Cal.App.4th 1458, 1464.) Additionally, " ' "[w]here a surety bond is given pursuant

11

to the requirements of a particular statute, the statutory provisions are incorporated into the bond." ' " (*Corby v. Gulf Ins. Co.* (2004) 114 Cal.App.4th 1371, 1375.)  Thus, "[t]he liability of a surety on a bond issued in conformity with sections 11710 and 11711 is determined from the express terms of the bond read in light of those statutes.  The statutory provisions are incorporated into the bond.  Liability must be found within that bond or not at all." (*Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 90.)

Here, plaintiff alleged a single cause of action against surety defendant for liability on its bond pursuant to section 11711, subdivision (a).  Plaintiff was required to prove surety defendant's liability on the bond under the provisions of this statute, regardless of whether the dealer's acts could give rise to the dealer's separate liability under the CLRA.  The dealer is not a party to this appeal, the judgment against the dealer has not been appealed, and a surety is not liable simply because its principal may be liable to the plaintiff.  Accordingly, plaintiff's focus on the standard applicable to prove liability under the CLRA—a claim that was never alleged against surety defendant—incorrectly frames the issue on appeal.

2. <u>The Trial Court Did Not Err in Concluding Surety Defendant's Liability on the Bond Required Proof of Fraud</u>

As we have already explained, plaintiff was required to prove surety defendant's liability pursuant to the terms of section 11711, subdivision (a).  By its very terms, section 11711, subdivision (a), renders a surety liable for "any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer . . . and such person has possession of a written instrument furnished by the

12

licensee, containing stipulated provisions and guarantees which the person believes have been violated by the licensee . . . ." Thus, the standard necessary to prove the dealer's liability under the CLRA would only be relevant if the terms "fraud" or "fraudulent representation" as used in section 11711, subdivision (a), can be read to include any deceptive practice giving rise to liability under the CLRA.

The proper interpretation of a statute is a matter subject to our de novo review. (*Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 478 ["Our interpretation of a statute is typically subject to de novo review."]; *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301 [We "apply the de novo standard of review in interpreting the statute."].) We conclude that the terms "fraud" and "fraudulent representation" as used in section 11711, subdivision (a), cannot be interpreted to incorporate all acts that might give rise to liability under the CLRA.

First, multiple appellate decisions have construed the terms of section 11711, subdivision (a), to require a plaintiff to prove an underlying claim for common law fraud in order to recover under the statute. (*Beverly Finance Co. v. American Casualty Co.* (1969) 273 Cal.App.2d 259, 267-268 (*Beverly Finance Co.*) ["[T]he words 'fraud' and 'fraudulent representation' in sections 11710 and 11711 of the Vehicle Code were intended by the Legislature to be used in the normal meaning of fraud," requiring proof of an intent to deceive.]; *American Air Equipment*, *Inc. v. Pacific Employers Ins. Co.* (1974) 37 Cal.App.3d 322, 327 (*American Air Equipment*) [applying normal elements of common law fraud claim to evaluate sufficiency of evidence because "the Legislature meant what it said when it used the words 'fraud' and 'fraudulent representation' in

13

section 1171, subdivision (a)."]; *Goggin v. Reliance Ins. Co.* (1962) 200 Cal.App.2d 361, 365 [evaluating claim under § 11711, sub. (a), under same clear and convincing standard of proof required for common law fraud].)  While plaintiff has pointed to some instances in which the term "fraud" has been interpreted more expansively in the context of other, unrelated statutes, he has not cited to any cases adopting such an expansive interpretation in the context of section 11711, subdivision (a).

Second, a surety's liability was already established under Vehicle Code section 11711 at the time of the CLRA's enactment,[5] and nothing in the CLRA suggests that the Legislature intended to alter already existing forms of liability established by statute or common law.  In fact, the CLRA expressly provides that "[i]f any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law." (Civ. Code, § 1752.)  By its very terms, the CLRA was intended to afford a plaintiff an additional remedy, without altering the requirements of any existing claims the plaintiff might already have under existing law.  (*Ibid.*; see *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1253, fn. 10.)  Thus, the CLRA cannot be interpreted

---

[5]  Section 11711 of the Vehicle Code was enacted in 1959.  (As amended by Stats. 1959, ch. 1827, § 7.)  The CLRA was enacted in 1970. (Stats. 1970, ch. 1550, § 1.)

as expanding or altering the type of acts that might give rise to liability under Vehicle Code section 11711, subdivision (a).[6]

Nothing in section 11711, subdivision (a), suggests that its reference to fraud incorporates any and all acts that might violate the CLRA. While a dealer's fraudulent act can constitute a violation of the CLRA, that does not mean that all violations of the CLRA rise to the level of fraud.[7] The plain terms of the statute and weight of appellate authority interpreting that statute does not support the expansive interpretation of section 11711, subdivision (a), which plaintiff seeks to apply in this case, and the trial court did not err in requiring proof of the dealer's fraud under a common-law standard in order to establish surety defendant's liability on its bond.

---

[6] We also note that, consistent with this understanding, appellate decisions both before and after enactment of the CLRA continued to interpret section 11711, subdivision (a), to require proof of a traditional common law fraud claim in order to recover on a surety's bond. (*Beverly Finance Co.*, *supra*, 273 Cal.App.2d. at p. 268; *American Air Equipment*, *supra*, 37 Cal.App.3d. at p. 327.)

[7] We recognize there are situations in which the same factual allegations might give rise to liability under both statutory schemes. "The conduct that violates [Vehicle Code] section 11711, i.e., fraud or fraudulent representation, falls within the CLRA." (*Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 91-92.) Thus, "plaintiffs routinely plead fraud, [unfair competition law], and CLRA claims based on similar allegations." (*Flores v. Southcoast Automotive Liquidators*, *Inc.* (2017) 17 Cal.App.5th 841, 850; see *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 35-38 [plaintiff may allege both a common law fraud claim and CLRA claim based upon same facts].) However, simply because an act of actual fraud constitutes a violation of the CLRA does not render all violations of the CLRA the equivalent of actual fraud. "Civil Code section 1770 describes 24 separate acts that may constitute a CLRA violation." (*Pierce*, at p. 91.) Most of these acts would not rise to the level of fraud or fraudulent representation because " '[f]raud is an intentional tort' " (*Lacher v. Superior Court* (1991) 230 Cal.App.3d 1038, 1046; see Civ. Code, §§ 1709, 1710), and only two of the acts proscribed under the CLRA contain an intent requirement. (Civ. Code, §§ 1709, 1710.)

D. *Any Error with Respect to the Trial Court's Interpretation of the Written Instrument Requirement of Section 11711, Subdivision (a), Could Not Have Been Prejudicial*

Finally, plaintiff contends the trial court misapplied the definition of written instrument set forth in section 11711, subdivision (a). We need not resolve this question because, even assuming the trial court erred in this regard, plaintiff could not have suffered any prejudice warranting reversal of the judgment from such an error.

In order to establish liability under section 11711, subdivision (a), a plaintiff must prove (1) he suffered loss or damage, (2) by reason of fraud practiced on him or a fraudulent representation made to him by a licensed dealer, and (3) he has possession of a written instrument furnished by the licensed dealer containing the stipulated provisions or guarantees violated by the dealer. Plaintiff acknowledges that the written instrument requirement is a distinct element of proof necessary to recover against a surety on a bond.[8]

Here, the trial court found that plaintiff failed to prove the second element of fraud practiced upon him by the dealer. Plaintiff's sole challenge to this finding was premised upon the argument that the term fraud in section 11711, subdivision (a), should be read to include all acts that might constitute a violation of the CLRA. However, as we have

---

[8] The purpose of the written instrument requirement is to prevent "collusion between licensees at the expense of a bonding company" by requiring that the dealer provide written evidence of the fraudulent representation. (*American Air Equipment*, *supra*, 37 Cal.App.3d. at p. 326.) This, in turn, ensures that, to the extent a surety is required to pay, its right to seek indemnification from the principal is preserved. (*Nat'l Tech. Sys.*, *supra*, 97 Cal.App.4th at p. 427 [" 'Under a surety bond, the principal is *not* indemnified [and] the surety can sue the principal for any sums it mut pay out to the obligee.' "].)

already explained, the trial court applied the correct standard in evaluating whether plaintiff proved fraud within the meaning of the statute. Plaintiff has not otherwise challenged the sufficiency of the evidence to support the trial court's finding on this element, and this finding alone supports a judgment in favor of surety defendant.

Given this conclusion, we need not resolve the issue of whether an advertisement or third party vehicle history report in this case might qualify as a written instrument for purposes of section 11711, subdivision (a). Where the trial court's finding on an independent element of the cause of action has not been challenged on appeal and is itself sufficient to warrant judgment in surety defendant's favor, we need not address claims of error with respect to findings related to other elements of the cause of action because, even assuming the trial court erred, plaintiff could not have suffered prejudice warranting reversal. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801 [" 'No form of civil trial error justifies reversal and retrial . . . where in light of the entire record, there was no actual prejudice to the appealing party.' "]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [An error "generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached."]; Cal. Const., art. VI, § 13.)

## IV.  DISPOSITION

The judgment is affirmed.  Surety defendant is to recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>FIELDS</u>
J.

We concur:


<u>RAMIREZ</u>
P. J.


<u>McKINSTER</u>
J.